**KENWORTH OF BOSTON, INC.,**
**Plaintiff, Appellee,**

v.

**PACCAR FINANCIAL CORPORATION,**
**and Ronald Russo, Defendants,**
**Appellees,**

**Paccar Inc., Defendant, Appellant.**

**No. 83–1861.**

United States Court of Appeals,
First Circuit.

Argued April 3, 1984.
Decided May 29, 1984.

Robert M. Buchanan, Boston, Mass., with whom Patrick K. Miehe, and Sullivan & Worcester, Boston, Mass., were on brief, for defendant, appellant.

William R. Sullivan, Wakefield, Mass., with whom Sullivan & Sullivan Law Offices, P.C., Wakefield, Mass., was on brief, for Kenworth of Boston, Inc.

Before COFFIN and BREYER, Circuit Judges, and BONSAL,* Senior District Judge.

BREYER, Circuit Judge.

Kenworth of Boston, Inc. ("KOB") distributes Kenworth trucks manufactured by defendant Paccar Inc. ("Paccar"). Before late 1982, Paccar not only sold KOB its trucks, but also financed the factory sales. To be more specific, it advanced KOB the money it needed to pay for the trucks between the time they left the factory and the time KOB resold them to retail customers—a service called "floor plan financing." Paccar provided this financing through a wholly-owned subsidiary called Paccar Financial Corp. In 1982, Paccar and KOB began to argue about whether KOB had misstated certain financial information relevant to the financing. Paccar told KOB it would no longer provide it with floor plan financing. And KOB responded by filing this antitrust suit against Paccar and others.

KOB's suit, insofar as is relevant here, claimed that Paccar not only refused to give it floor plan financing but also made it impossible for KOB to obtain substitute financing elsewhere, in particular from DB Credit Corp. ("DB")—a European firm that was willing to provide the financing. KOB said that Paccar unlawfully erected an obstacle to this alternative lender by refusing to promise that it would buy back trucks in KOB's inventory if KOB went bankrupt. KOB claimed that Paccar made this type of promise—called a "repurchase agreement" —to other dealers' lenders. And, under those circumstances, it believed that Paccar's refusal violated both the federal anti-

trust laws and the Commonwealth's "fair trade" statute, Mass.Gen.Laws ch. 93B.

The district court accepted KOB's arguments and issued a preliminary injunction forbidding Paccar from refusing to make a repurchase agreement with DB on behalf of KOB as long as it made such repurchase agreements with other lenders on behalf of other dealers. It issued the injunction and wrote a brief opinion without having heard from Paccar, whose papers in opposition apparently had been misplaced. The court heard Paccar's request for reconsideration, however, and denied it without opinion.

Paccar here appeals from the entry of the preliminary injunction. Applying traditional standards of review, see *Cintron-Garcia v. Romero-Barcelo*, 671 F.2d 1, 2 (1st Cir.1982) (per curiam); *Grimard v. Carlston*, 567 F.2d 1171, 1173 (1st Cir. 1978), we reverse the district court. In our view, KOB failed to satisfy all the conditions for a preliminary injunction. See *Cintron-Garcia v. Romero-Barcelo*, 671 F.2d at 2 (listing conditions); *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981) (same). In particular, it showed little, if any, likelihood of success on its federal antitrust claim and it failed to show any "irreparable injury" that the preliminary injunction might cure.

■ 1. KOB argues that Paccar's refusal to promise DB to repurchase KOB trucks either amounts to or forms part of a tying arrangement, which is unlawful under section 1 of the Sherman Act, 15 U.S.C. § 1. See *Jefferson Parish Hospital District No. 2 v. Hyde*, —— U.S. ——, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984); *Northern Pacific Ry. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *International Salt Co. v. United States*, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947). The classical ingredients of a tying claim consist of (i) significant market power in the "tying" product (here allegedly Paccar trucks), (ii) a "not insubstantial" amount of affected

* Of the Southern District of New York, sitting by designation.

"tied" product (here apparently credit), and (iii) a "tie," defined by the Supreme Court as

> an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier,

*Northern Pacific Ry. v. United States,* 356 U.S. at 5–6, 78 S.Ct. at 518 (footnote omitted). *United States Steel Corp. v. Fortner Enterprises, Inc.,* 429 U.S. 610, 616, 97 S.Ct. 861, 865, 51 L.Ed.2d 80 (1977) (describing elements of tying claim). We can find no coherent explanation here of how plaintiff's claim might satisfy these requirements, particularly the third. Where is the "tie?"

■ First, KOB seems at times to argue that Paccar sells dealers its trucks only if they agree to take credit from its own subsidiary or from Associates Commercial Corp. ("Associates"), an allegedly affiliated lender. But Paccar imposed no such condition on KOB. To the contrary, KOB *wanted* to obtain Paccar credit and Paccar did not want to supply it. KOB never sought to avoid Paccar as a source of credit. Nor is there evidence suggesting that Paccar tells *other* dealers that it will sell them Paccar trucks only if they obtain credit from Paccar (or Associates). And, even if there were, KOB does not explain how such an agreement with respect to *other* dealers would hurt KOB. *See Blue Shield of Virginia v. McCready,* 457 U.S. 465, 476–78, 102 S.Ct. 2540, 2547–48, 73 L.Ed.2d 149 (1982); *Litton Systems, Inc. v. American Telephone & Telegraph Co.,* 700 F.2d 785, 821–22 (2d Cir.1983), *cert. denied,* ― U.S. ―, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984).

Second, KOB may be making a more subtle claim, namely, that Paccar promises to repurchase its trucks only if its dealers use its (or Associates') credit and that this "repurchase agreement" has the *effect* of "tying" Paccar credit to Paccar trucks. Again, there is no evidence that Paccar tried—with or without the repurchase agreement—to force KOB to use Paccar or Associates credit. To the contrary, if anyone, it is KOB, not Paccar, that would like to see Paccar credit made available to KOB. And, as before, we do not see how Paccar's use of this agreement with respect to some other dealers could amount to a tie injuring KOB.

We have other difficulties with KOB's tying theory. Paccar, for example, sells only about 18 percent of all heavy trucks sold. Do Paccar's competitors also make repurchase agreements? If not, how does Paccar's refusal to make one with respect to KOB prevent KOB from obtaining financing elsewhere—for example, from those who finance Paccar's competitors' dealers? If the whole industry makes these agreements, how do Paccar's agreements distort competition for trucks? Or is KOB attacking an entire industry practice? *Cf. Standard Oil Co. of California v. United States,* 337 U.S. 293, 309, 69 S.Ct. 1051, 1060, 93 L.Ed. 1371 (1949). Again, if so, how does that practice injure one *not* subject to it—one like KOB who is not being forced or induced to use the manufacturer's credit sources? None of these questions is answered with sufficient clarity to warrant a court finding a likelihood of success on the merits of a tying theory. We need not treat the concept of a "tie" like a procrustean bed onto which this practice must be squeezed or stretched—particularly when doing so could lead to finding "per se" unlawful a practice that may well be justified as reasonable. *See Jefferson Parish Hospital District No. 2 v. Hyde,* ― U.S. at ― ―, 104 S.Ct. at 1570–74 (O'Connor, J., concurring in the judgment); R. Bork, *The Antitrust Paradox* 411 (1978). These questions and problems make KOB's success on the merits of a tying claim most unlikely.

■ 2. We also find no irreparable injury to justify the preliminary injunction that issued. KOB sought and the district court granted an injunction enjoining Paccar "as long as [it] shall continue to give any repurchase agreement to any finance company in connection with the floor planning ... of

Kenworth trucks ... from refusing to give a similar repurchase agreement to DB ....." Without this injunction, the district court thought, "Paccar would have an unrestricted right to unload a maximum number of trucks on [KOB] against its wishes" and since KOB "could not sell trucks ... the business would close within 60 to 90 days ...." Under the circumstances of this case, however, neither reason supports the issuance of the injunction.

The first reason mistakes the nature of the repurchase agreement. This agreement would not, as the district court apparently believed, prevent Paccar from "dumping" trucks on KOB—if indeed it actually could do so. It would guarantee only that Paccar would repurchase all of KOB's unsold Paccar-made inventory if KOB went out of business. The agreement has nothing to do with the ordering, delivery, and acceptance of trucks.

The second reason mistakes the facts. Although business closure can constitute irreparable harm, *Chinetti-Garthwaite v. Ferrari Societa per Azioni Esercizio Fabbriche Automobili e Corse*, 463 F.Supp. 73, 75 (E.D.Pa.1978), here there was no such threat if the injunction was not granted. Paccar states without denial that it sells trucks to a significant number (about 45 percent) of Paccar dealers who do not finance through either Paccar or Associates. KOB alleges that Paccar offers repurchase agreements only to its own subsidiary and Associates. Thus, at worst, Paccar's refusal to make a repurchase agreement with DB put KOB in the same position as that of Paccar's other dealers who do not finance through Paccar or Associates (or perhaps through an affiliate of another manufacturer whose trucks they sell). The record does not indicate that they had any difficulty obtaining floor plan financing; KOB, in fact, ultimately did obtain DB floor plan financing without benefit of a repurchasing agreement. This fact argues strongly against irreparable harm. Furthermore, KOB's own president and expert witness stated that a dealer could normally obtain floor plan financing so long as the manufacturer agreed either to repurchase unsold trucks in the event of bankruptcy or to obtain the lender's approval before building any trucks ordered. Paccar says, and KOB does not convincingly deny, that Paccar was always willing to seek DB's approval of KOB's orders before it filled them. Thus, Paccar created no unusual obstacles to KOB's floor plan financing that could have caused KOB irreparable harm.

We can see no other reasons why KOB would be irreparably harmed without this preliminary injunction. The injunction, in fact, does not even require Paccar to make the repurchase agreement that KOB claims is so critical. It merely requires Paccar to make such an agreement *if* it makes or continues one with any other lender, including its own subsidiary. Rather than make such an agreement with DB, Paccar terminated its existing agreement with Associates. Thus, the injunction did not directly change KOB's position. Its only *possible* effect was indirect. By forcing Paccar to treat all floor plan lenders similarly, KOB could argue, the injunction might have removed some "floor plan" advantage that dealers financed through Associates might have. KOB, however, made no such argument and the record does not reveal any such advantage.

3. The district court also found a possible violation of Mass.Gen.Laws ch. 93B. The grounds set forth in section 2 above, however, are sufficient reason for setting aside a preliminary injunction on this claim without exploring any possible differences between ch. 93B and the federal antitrust laws.

The order of the district court is

*Reversed.*