FLORIDA MONUMENT BUILDERS, Plaintiff,

v.

ALL FAITHS MEMORIAL GARDENS, et al., Defendants.

No. 83–2362–CIV.

United States District Court,
S.D. Florida, S.D.

Dec. 26, 1984.

See also, D.C., 605 F.Supp. 1324.

Ray Fechtel, Eugene, Or., James Couney, Palm Beach, Fla., Roger Tilburg, Portland, Or., for plaintiff.

Steel, Hector & Davis, Holland & Knight, Floyd Pearson, Richman, Greer, Weil, Zack & Brumbaugh, P.A., Miami, Fla., for defendants.

## ORDER OF DISMISSAL

NESBITT, District Judge.

THE COURT has reviewed the Motion to Dismiss Amended Complaint filed by a number of the Defendants in this case, and the response thereto filed by the Plaintiff, and after due consideration, the Court makes the following findings:

1. On April 18, 1984 the Court entered an Order dismissing the Plaintiff's four count antitrust Complaint with leave to amend. On May 18, 1984, the Plaintiff filed an Amended Complaint which attempted to state two causes of action under the antitrust laws. Count I alleged that the Defendants were utilizing illegal tying arrangements, and Count II alleged a conspiracy on the part of the Defendants to restrain trade by engaging in these illegal tying arrangements.

A number of Defendants have filed motions to dismiss the Amended Complaint, while other Defendants have answered the Amended Complaint, alleging failure to state a cause of action as an affirmative defense. Notwithstanding the nature of the defensive pleadings filed, the Court has reviewed the sufficiency of the Amended Complaint, and hereby addresses each of the Counts as they apply to all the Defendants.[1]

2. In order to state a cause of action for a per se illegal tying arrangement, a plaintiff must allege three factors: (1) the existence of a tie between two products and/or services; (2) that the defendants possess significant market power in the "tying" product; and, (3) a "not insubstan-

---

1. In view of the multiple defendants and the variety and style of the defensive pleadings filed, the Court is following the same format in ruling on the Amended Complaint and motions filed by the Defendants as was set forth in the Order of April 18, 1984 dismissing the original complaint.

tial" amount of affected "tied" product. *Spartan Grain & Mill Company v. Ayers*, 735 F.2d 1284 (11th Cir.1984); *Kenworth of Boston v. Paccar Financial Corp.*, 735 F.2d 622 (1st Cir.1984). In this case, the Plaintiff has alleged the existence of a tie, with cemetery plots being the "tying" product and grave markers and installation being the "tied" product and service. The Plaintiff has also alleged that a not insubstantial amount of commerce in the tied market has been affected by the Defendants' alleged activities. The issues in dispute are: (1) the meaning of the requirement of economic power in the market for the tying product, and (2) the allegations necessary to satisfy this requirement.

Count I of the Amended Complaint attempts to state the tying cause of action. The Plaintiff alleges that the Defendant cemeteries have forced purchasers of cemetery lots to also purchase grave markers and/or marker installation services from them. Plaintiff claims this is done through the use of rules and regulations which either mandate the combined sale or impose severe burdens on those who would choose not to make the combined purchase. These activities have allegedly caused the Plaintiff's members to lose sales they otherwise would have made to individuals purchasing lots in the Defendants' cemeteries.

It is the Defendants' contention that the Plaintiff has failed to make the necessary allegations that the Defendants possessed significant market power in the tying product. The Plaintiff urges the Amended Complaint is legally sufficient by relying exclusively on the two case decisions: *Rosebrough Monument Co. v. Memorial Park Cemetery Association*, 666 F.2d 1130 (8th Cir.1981), *cert. denied*, 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982), and *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207 (9th Cir.1977), *appeal after remand*, 682 F.2d 830 (9th Cir.1982).

Both of these cases dealt with similar claims by monument builders against cemeteries for alleged illegal tying arrangements. In both of these cases, the Courts of Appeal referred to the uniqueness of individual cemetery plots as providing the Defendants with the necessary market power in that market. The decisions relied on the age-old notion of the "uniqueness of land" to provide the basis for these findings.

However, the opinions also note that in both cases, the defendants *controlled a substantial share of the cemetery market within a limited geographic area*. In *Moore*, the Court noted that the defendants had accounted for 78 percent of all the internments in Lane County, Oregon, the geographic market in issue. In *Rosebrough*, the relevant geographic market was deemed to be metropolitan St. Louis, Missouri, where the Defendants had provided 22 percent of all burials.

The Defendants reject the analysis of the economic power requirement made in these two cases. They claim that *Moore* and *Rosebrough* have not been followed by the Eleventh or former Fifth Circuits, and that their analysis of the economic power requirement was rejected implicitly by the United States Supreme Court in its recent decision in *Jefferson Parish Hospital District No. 2 v. Hyde*, —— U.S. ——, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). Specifically, the Defendants claim that under the *Jefferson Parish* decision, a per se illegal tie can be established only where there is a finding of "the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." —— U.S. at ——, 104 S.Ct. at 1558. In as much as *Moore* and *Rosebrough* did not rely on an actual "forcing" as required by the *Jefferson Parish* case, the Defendants claim they have been implicitly rejected by the Supreme Court.

The *Jefferson Parish* decision did not change the law concerning illegal tying arrangements. Rather, it focused on clarifying the requirement of sufficient economic power in the tying market such as to allow a finding of a per se illegal tie. The Supreme Court concluded that sufficient economic power in the tying market is mani-

fested by a "forcing" of sales of the tied product through use of power in the tying product market. In analyzing the issue, the Supreme Court looked to the share of the market controlled by the defendant, and found that a 30 percent share of that relevant geographic market in the tying product did not constitute sufficient power to establish a tie.

■ Following the *Jefferson Parish* analysis, the Court has reviewed the Amended Complaint and finds no allegations that the Defendants dominated the relevant geographic market for the tying product, cemetery plots in Florida. In fact, there are no allegations whatsoever pertaining to the share of the cemetery plot market in Florida controlled by the Defendants. There is not even a conclusory allegation that the Defendants controlled sufficient power in the market for cemetery plots to allow them to force consumers to also buy markers and/or installation services which they would have otherwise purchased elsewhere. Instead, the Amended Complaint merely states that the Defendants tied the sale of plots to the sale of markers and/or installation, and that the Plaintiff's members lost sales as a result of these ties.

It is the Court's view that even under the *Moore* and *Rosebrough* analysis, this Amended Complaint may be insufficient to state a cause of action for an illegal tying arrangement. In both of those cases, the Courts dealt with very limited geographic areas, and found that the Defendant cemeteries controlled some substantial portion of that limited market. In this case, the geographic market is very large, the entirety of Florida. Also, the Plaintiff did not allege what share of the burials in Florida are done by the Defendants, nor did it even make the conclusory allegation that the Defendants do control some substantial portion of the cemetery business in Florida.

Accordingly, analyzing the Amended Complaint under any appropriate theory, the Court finds that it fails to state a claim that the Defendants' conduct amounted to a per se illegal tying arrangement.

. . .

■ However, the analysis of Count I does not stop with the conclusion that no per se illegal tie is stated. The Court must also determine whether the Plaintiff's Amended Complaint states a cause of action for actual restraint of trade. This issue was addressed in the *Jefferson Parish* case, where the Supreme Court held that "[i]n order to prevail in the absence of per se liability, respondent has the burden of proving that the [tie] violated the Sherman Act because it unreasonably restrained competition". — U.S. at ——, 104 S.Ct. at 1567.

The Amended Complaint makes no allegations showing that competition in the market for markers and installation service has been restrained. There are no facts pled, nor even a conclusory statement alleged to show the critical element of market restraint by the Defendants. All that the Amended Complaint says is that the Plaintiff's members lost sales as a result of the Defendants' conduct.

The law is well settled, however, that a mere showing of injury or loss of income by a plaintiff without a showing of an injury to competition in the market, is not sufficient to state a cause of action for restraint of trade. As the Supreme Court stated in *Brunswick Corp. v. Pueblo Bowl-O-Mat Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), "the antitrust laws ... were enacted for 'the protection of *competition* not competitors'" (Citation omitted, emphasis in original.) *See also Robert's Waikiki U-Drive v. Budget Rent-A-Car Systems*, 732 F.2d 1403, 1408 (9th Cir.1984) ("injury to the antitrust plaintiff alone is not sufficient to prove injury to competition").

Accordingly, the Court finds that Count I of the Amended Complaint fails to state a cause of action, either for a per se illegal tying arrangement or for an actual restraint of trade claim under the Sherman Act, 15 U.S.C. § 1.

■ 3. In Count II of the Amended Complaint, the Plaintiff has attempted to state a cause of action for a conspiracy to

restrain trade by the Defendants' implementation of illegal tying arrangements. Referring initially to the substance of this claim, the Court finds that Count II fails to state a cause of action because the Amended Complaint does not contain allegations showing illegal tying arrangements by the Defendants. Assuming arguendo that the Plaintiff's Amended Complaint did state a cause of action against individual Defendants for maintaining illegal tying arrangements, it still fails to state a cause of action for conspiracy as among those Defendants.

Paragraphs 31 and 33 of the Amended Complaint allege the "details" of the purported conspiracy. The Plaintiff asserts that the Defendants conspired with one another and with members of various regional and national cemetery associations to restrain trade, and that this conspiracy was based upon a continuing agreement between the Defendants and the members of the various cemetery associations.

The Defendants have claimed that the Amended Complaint fails to state a cause of action for conspiracy because of the complete lack of factual allegations regarding the means and methods by which this conspiracy began and operated. They also refer to this Court's Order of April 18, 1984, wherein the Court stated that:

> Plaintiff does little more than state conclusory allegations that these Defendants conspired among themselves to restrain trade. This mere conclusion does not state a cause of action. Under governing law, the Plaintiff must allege such facts indicating the existence of a conspiracy, or must allege such facts to at least allow a reasonable inference of conspiracy, such as by showing parallel conduct among the Defendants.

Order of April 18, 1984, at p. 2.

In the April 18, 1984, Order, this Court relied on *Quality Foods de Centro America v. Latin American Agribusiness Development Corp.*, 711 F.2d 989 (11th Cir. 1983), and *City of Gainesville v. Florida Power & Light Co.*, 488 F.Supp. 1258 (S.D. Fla.1980), to provide the standard for determining whether an antitrust conspiracy complaint was legally sufficient. Applying this standard to the Amended Complaint, the Court finds once again that the Plaintiff's pleading is insufficient. In fact, the Plaintiff's Amended Complaint evinces no improvement over the original Complaint, except for the use of numbered paragraphs as required by Rule 10(b) of the Federal Rules of Civil Procedure.

In conclusion, the Court finds that the Amended Complaint fails to allege substantive wrongful conduct on the part of the Defendants. For this reason, the allegations of both the tying and the conspiracy claims are insufficient under the Rules of Procedure and under decisional case law. Even if the tying claim was determined to be legally sufficient, the conspiracy claim would still fail to state a cause of action as it does not allege any facts to show the existence of a conspiracy.

ACCORDINGLY, for the reasons set out above, it is

ORDERED AND ADJUDGED that the Motions to Dismiss Amended Complaint be and the same are hereby GRANTED, and the Amended Complaint be and the same is hereby DISMISSED WITH PREJUDICE.