RINGTOWN WILBERT
VAULT WORKS

v.

SCHUYLKILL MEMORIAL PARK,
INC. and Centurion Vault
Company.

Civ. A. No. 84–1418.

United States District Court,
E.D. Pennsylvania.

Dec. 30, 1986.

George M. Painter, King of Prussia, Pa.,
for plaintiff.

Alfred J. Tagliaferri, Philadelphia, Pa.,
for defendant.

## MEMORANDUM AND OPINION

HUYETT, District Judge.*

Plaintiff Ringtown Wilbert Vault Works (Ringtown) has brought this action against Schuylkill Memorial Park (Schuylkill) and Centurion Vault Company (Centurion) under the antitrust laws. Ringtown and Centurion are competitors in the manufacture and sale of burial vaults in Schuylkill County, Pennsylvania. Schuylkill operates a memorial park in Schuylkill County. Plaintiff asserts that Schuylkill has tied the sale and installation of burial vaults to the sale of grave lots, and that Schuylkill has combined with Centurion to execute this tying arrangement and to monopolize the market for the sale and installation of burial vaults in Schuylkill County. At the heart of plaintiff's claims is Schuylkill's admitted practice of requiring its customers to purchase burial vaults through Schuylkill. Schuylkill, in turn, has bought virtually all of

* By Thomas N. O'Neill, Jr., Acting as Emergency     Judge.

those vaults from Centurion. Thus, it is alleged that the defendants have prevented consumers from making individual arrangements for the purchase and installation of burial vaults, and have foreclosed competition. Plaintiff also asserts a state law claim for intentional interference with contract. Currently before me are motions for summary judgment submitted by each of the parties.

Summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). The court does not resolve questions of disputed fact, but simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson*, 556 F.2d 692 (3d Cir. 1977). Any reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982); *Toebelman v. Missouri-Kansas Pipe Line Co.*, 130 F.2d 1016, 1018 (3d Cir.1942). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 105 S.Ct. at 2511 (citations omitted). The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.*

For the reasons which follow, I will grant summary judgment in favor of the plaintiff and against defendant Schuylkill Memorial Park for liability arising from the tying arrangement. I will grant summary judgment in favor of defendants Schuylkill and Centurion and against plaintiff on the conspiracy claim. Because the plaintiff has failed to put forth any argument in support of its motion for summary judgment on the state law claim, I am unable to decide that

issue at this time. However, I grant plaintiff leave to renew the motion within twenty days of the date of this order.

## JURISDICTION

Before addressing the merits of this case, I must consider defendant Schuylkill's argument that the plaintiff has failed to show an effect on interstate commerce sufficient to give this court jurisdiction.

Where plaintiff's jurisdictional allegations are challenged, plaintiff must demonstrate by submission of evidence beyond the pleadings that an intrastate activity has a not insubstantial effect on interstate commerce. *McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980). The plaintiff may meet its burden by showing that "either the activities of the target of the antitrust violation or defendants' activities" have the necessary effect on interstate commerce. *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1192 (3d Cir.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985). In considering whether it has jurisdiction, the court is not limited to the question of whether the alleged violation, in and of itself, has an effect on interstate commerce. The court may look generally to the parties' activities in the manufacture, sale, and installation of burial vaults and in the sale of burial lots. *McClain*, 444 U.S. at 242–43, 100 S.Ct. at 509.

As is discussed in greater detail, *infra*, plaintiff has shown that approximately 57% of the raw materials it uses in the manufacture of burial vaults are purchased through interstate commerce. For the 1,618 vaults manufactured in 1986, this amounted to $48,375.81. In addition, plaintiff purchases heavy equipment and various other supplies which are not directly affected by the tying practice.

Plaintiff's business activities clearly have a substantial effect on interstate commerce. Therefore, the plaintiff has established that the court has jurisdiction under the Sherman Act.

## THE TYING VIOLATION

In order to establish a *per se* tying violation, the plaintiff must prove three elements by a preponderance of the evidence:

1) That the seller has conditioned the sale of one product on the purchase of another;

2) That the seller had sufficient economic power with respect to the tying product to appreciably restrain competition in the market for the tied product; and

3) That a not insubstantial amount of interstate commerce is affected.

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir.1977). The plaintiff has met its burden as to each of these elements.[1]

### A. The existence of a tie.

There can be no question but that burial lots and burial vaults are separate products. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 24, 104 S.Ct. 1551, 1564, 80 L.Ed.2d 2 (1984); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1215 (9th Cir.1977).[2] The vault installation services are similarly separate from the burial lots.[3]

It is undisputed that Schuylkill requires that the consumer purchase a burial vault from Schuylkill at the time of interment. Deposition of Martha L. Reynolds at 19, 31. The sale of lots is expressly conditioned on the sale of the burial vault. The first element of a *per se* violation is satisfied.

### B. Economic power.

Economic power with respect to the tying product may be established in either of two ways. It can, as the defendants argue, be shown by proof of a sufficiently large market share. *Jefferson Parish*, 104 S.Ct. at 1560–61. It may also be established where the seller offers a unique product. *Id.* The degree of market power (market share) and the kind of market power (uniqueness of the product) are separate elements which may, alone or in combination, make *per se* condemnation appropriate. *Id.* 104 S.Ct. at 1561; *Microbyte Corp. v. New Jersey State Golf Ass'n*, 55 U.S.L.W. 2078 (D.N.J. June 26, 1986); *McMorris v. Williamsport Hosp.*, 597 F.Supp. 899, 912–13 (M.D.Pa.1984). Economic power must be examined on a case-by-case basis. In *Jefferson Parish*, the Supreme Court found a 30% market share insufficient to establish market power. 104 S.Ct. 1566–67. However, where both factors are present, a lesser market share may be offset by the degree of uniqueness of the product.

In the present case, the tying product is a burial lot. It is undisputed that Schuylkill conducts roughly 10% of the burials which take place in the relevant market (Schuylkill County) in an average year. Reynolds Deposition at 7. It is well established that land is sufficiently unique to establish the market power element of a *per se* tying violation. *Northern Pacific R.R. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *Bogosian v. Gulf Oil Corp.*, 561 F.2d at 453–54. Cemetery lots are no less unique than other real estate. *Rosebrough Monument Co. v. Memorial Park Cemetery Ass'n*, 666 F.2d 1130, 1142–43 (8th Cir.1981), *cert. denied*, 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1215 (9th Cir.1977).

---

1. If the plaintiff is unable to show a *per se* violation, it may show that there exists an unreasonable restraint of trade under a rule of reason analysis. Under either approach, the plaintiff will be required to show the existence of a tie, and a not insubstantial effect on interstate commerce.

2. Although Schuylkill, in a footnote, asserts its belief that "a persuasive argument can be made" that the two products are part of one package, it does not pursue the argument, and offers no support for its assertion that any separate market for burial vaults is merely a reflection of aggressive marketing techniques. In any event, the mere fact that a separate market is created through advertising is irrelevant to the issue at hand. The goal of all marketing is to successfully differentiate the product so that the consumer will prefer it to that of the competitor.

3. All references to the purchase of burial vaults will hereafter include the purchase of installation services.

Schuylkill's control over the burial lot enables it to foreclose competition by forcing the consumer to purchase a burial vault which he might have preferred to purchase elsewhere on different terms. *Jefferson Parish*, 104 S.Ct. at 1558. The unique nature of the product, particularly when coupled with a 10% market share, clearly satisfies the second element of a *per se* tying violation.[4]

### C. Effect on interstate commerce.

The final element of a *per se* illegal tying arrangement is proof of a not insubstantial effect on interstate commerce. This is an element of the substantive offense, as well as of the jurisdictional standard under the Sherman Act. *Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Center*, 721 F.2d 68, 71 (3d Cir.1983). However, in considering the substantive offense, the court must narrow its focus and consider only the effect of the tying arrangement on interstate commerce.[5]

The question is whether the sale of these burial vaults, admittedly on a local level, nevertheless has an indirect effect on interstate commerce, and whether the dollar volume of the commerce so affected is substantial. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Cardio-Medical Associates*, 721 F.2d at 71. Whether there is a substantial effect is determined on a "case-by-case, practical economic basis." *Harold Friedman Inc. v. Thorofare Markets Inc.*, 587 F.2d 127, 132 (3d Cir. 1978).

Although I granted an additional opportunity for discovery, plaintiff has not produced any concrete evidence of defendant Centurion's interstate purchases. But since plaintiff has been foreclosed from the market, and its demand for raw materials necessarily reduced, it is entirely appropriate to consider whether the raw materials used by the plaintiff travel in interstate commerce. *See United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1192 (3d Cir.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985) (it is appropriate to look to the plaintiff's interstate activity); *Harold Friedman*, 587 F.2d at 132 (a significant effect of any sort on interstate commerce may be considered); *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 834 n. 4 (9th Cir.1982) (the court may consider interstate purchases of raw materials).

However, in looking to the plaintiff's interstate purchases, I will consider only the *cost* of materials purchased by the plaintiff. It is the interstate market for raw materials, and not the market for the sale of vaults, which is affected by this tie. It is therefore inappropriate to consider the retail price of the vaults. *See Johnson v. Soundview Apartments Housing Development Fund Co., Inc.*, 588 F.Supp. 1381, 1382–83 (S.D.N.Y.1984). Moreover, plaintiff's suggestion that I should multiply the sales price of the vaults by the percentage of raw materials purchased would distort the calculation because it fails to take into account such costs as labor and overhead.

It is undisputed that "approximately 10 percent of a total of roughly 2,000 burials performed annually in Schuylkill County take place at Schuylkill Memorial Park." Schuylkill Memorandum at 3. It has also been established that, since at least 1951, Schuylkill has tied the sale of lots to burial vaults. Reynolds Deposition at 19–20. In fiscal year 1986, 57% of the cost of raw materials used by the plaintiff in manufacturing 1,618 burial vaults, or a total of $48,375.81 was attributable to goods which travelled in interstate commerce. Nov. 15, 1986 Affidavit of Noel Brouse. Thus, the cost of raw materials used in manufacturing 200 vaults per year would be $5980.[6]

---

4. *Florida Monument Builders v. All Faiths Memorial Gardens*, 605 F.Supp. 1320 (S.D.Fla.1984) is neither controlling precedent, nor inconsistent with this holding.

5. The court may not look to the general business activities of the parties, as was appropriate when considering jurisdiction.

6. ($48,375.81/1618) X 200. In the most recent year, 234 vaults were sold by Schuylkill. Reynolds Deposition at 7. I note also that plaintiff

Making allowances for inflation, the effect on interstate commerce would be well over $100,000.

There is no simple benchmark by which I may determine whether this is a not insubstantial effect on interstate commerce. It is appropriate to consider the aggregate effect over the duration of the violation. The effect of a one shot transaction is quite different from that of an ongoing practice. However, the figure is meaningless unless it is viewed in the context of a time frame. Thus, the cases the court has reviewed have consistently stated the aggregate amount in that context. None of those cases has held an annual dollar amount of $6000 to be "substantial." On the other hand, none of them has considered a tying arrangement which has continued for so long a period. *See Bell v. Cherokee Aviation Corp.*, 660 F.2d 1123, 1130 (6th Cir. 1981) ($140,000 over three years not insubstantial); *Microbyte Corp. v. New Jersey State Golf Ass'n*, 55 U.S.L.W. 2078 (D.N.J. June 26, 1986) ($27,264 in one year is not *de minimis*); *AAMCO Automatic Transmissions, Inc. v. Tayloe*, 407 F.Supp. 430, 436 (E.D.Pa.1976) ($50,000 over four years [7] is not insignificant). Considering the aggregate volume of interstate commerce affected in this case, I find it is not insubstantial.[8]

For these reasons, I find a *per se* tying violation, and will grant summary judgment in favor of the plaintiff for liability.

## CONSPIRACY

In order to establish an illegal combination under section one of the Sherman Act, plaintiff must show, *inter alia*, a conscious commitment to a common scheme through evidence which "tends to exclude the possibility that the [defendants] were acting independently." *Monsanto Co. v. Spray Rite Service Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984).

The totality of the evidence submitted by the plaintiff is as follows:

1) A claim that Centurion's officers were aware of Schuylkill's tying practices; [9]

2) Evidence that Centurion had installed vaults of other manufacturers in Schuylkill Memorial Park;

3) Evidence that on one occasion Centurion attempted to purchase a vault from plaintiff for interment in Schuylkill Memorial Park and that, at about the same time, plaintiff received an order from a funeral director for a vault to be interred at Schuylkill.

Drawing all inferences from this evidence in favor of the plaintiff, the most that can be said is that Centurion was aware of Schuylkill's practices, and was willing to sell burial vaults and installation services to them. There is no evidence whatsoever that any agreement existed between the defendants.

"Proof of consciously parallel business behavior is circumstantial evidence from which an agreement ... can be inferred but ... such evidence, without more, is insufficient unless the circumstances under which it occurred make the inference of rational, independent choice less attractive than that of concerted action." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir.1977). Plaintiff has shown no circumstances which lead the court to believe that Centurion has not acted independently. Therefore, I will grant summary judgment

---

has purchased gasoline, oil and tires in interstate commerce, which goods are used in the installation of the vaults. Therefore, the actual figure may be slightly higher.

**7.** Both Schuylkill and Ringtown refer to this case as considering a *three* year period. Reference to the case indicates that it the violation occurred over "fiscal years 1969 *through* 1972." By my count, the court was considering a four year period.

**8.** Because I find that this tying arrangement is a *per se* violation, it is not necessary to consider the justifications offered by the defendant for the practice.

**9.** Plaintiff cites the deposition of Neil Brouse at 70–71, but I find no evidence there which supports this claim. I do note, at page 47 of the deposition, the statement "they will not let anybody else go in. They service all the vaults in her cemetery."

in favor of the defendants and against plaintiff on the conspiracy claim.