April 6, 1993

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2301

COASTAL FUELS OF PUERTO RICO, INC.,

Plaintiff, Appellant,

v.

CARIBBEAN PETROLEUM CORPORATION, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge.]

Before

Breyer, Chief Judge,

Selya and Cyr, Circuit Judges.

Michael S. Yauch with whom John F. Malley, III, McConnell,

Valdes, Kelly, Sifre, Griggs & Ruiz-Suria and Neil O. Bowman were on

brief for Coastal Fuels of Puerto Rico, Inc.
Ruben T. Nigaglioni with whom Jorge A. Antongiorgi, and Ledesma,

Palou & Miranda were on brief for Caribbean Petroleum Corporation.

Juan F. Doval with whom Jorge R. Jimenez and Miguel Garcia Suarez

were on brief for Harbor Fuel Service, Inc. and Caribbean Fuel Oil
Trading, Inc.

April 6, 1993

1

BREYER, Chief Judge. Coastal Fuels of Puerto Rico

buys marine fuel oil in San Juan and resells that oil to

ocean-going liners at berth in San Juan Harbor. It brought

this antitrust action against its local fuel oil supplier,

Caribbean Petroleum Corporation ("CAPECO"), and two of its

competitors, both of whom CAPECO supplies. Coastal

basically claims that ever since October 1991, when Coastal

entered the San Juan market, CAPECO has charged Coastal's

two competitors prices that are significantly lower than the

prices it charges Coastal. This unjustified price

difference, says Coastal, violates the Robinson-Patman Act,

15 U.S.C. 13, and the Sherman Act, 15 U.S.C. 1. Coastal

asked the district court to enter a preliminary injunction

"requiring CAPECO to provide fuel oil to Coastal on terms

and conditions no less favorable than those made available"

to Coastal's competitors. The district court decided not to

enter the injunction. Coastal appeals. We affirm the

decision.

In deciding whether to issue a preliminary

injunction, a district court must ask whether the plaintiff

is likely to succeed on the merits, whether the plaintiff

will otherwise suffer irreparable harm, whether the benefits

of an injunction will, on balance, outweigh the burdens, and

whether an injunction is consistent with the "public

interest." Planned Parenthood League v. Bellotti, 641 F.2d

1006, 1009 (1st Cir. 1981); Boston Celtics Ltd. Partnership

v. Shaw, 908 F.2d 1041, 1048 (1st Cir. 1990). This court

will normally give the district court considerable leeway in

making its decision, at least where, as here, the decision

rests upon an exercise of judgment and a record that is

incomplete. Indeed, normally we will reverse the district

court's decision on such matters only if we are convinced

that it "abused its discretion" or committed a "clear error"

of fact or related law. See, e.g., Massachusetts Ass'n of

Older Americans v. Sharp, 700 F.2d 749, 751-52 (1st Cir.

1983). We can find no such error in the present case.

For one thing, Coastal's "likelihood of success on

the merits," is, at best, uncertain. On the one hand,

Coastal presented witnesses who testified to facts

indicating significant price differences. They said that:

(1) After Coastal entered the San Juan market, the
resale prices charged by its competitors (to the
ships) dropped by nearly $1 per barrel;

(2) Coastal's competitors' resale prices were at,
or below, the prices CAPECO charged Coastal;

(3) Coastal, though it had expected to earn
profits, lost $1.3 million during its first ten
months of operations;

-3-
3

(4) CAPECO (perhaps by mistake) once sent Coastal
an invoice showing a price of $1.45 per barrel
less than the price CAPECO charged Coastal;

(5) Two CAPECO executives told Coastal executives
that CAPECO was charging Coastal's competitors
lower prices than CAPECO charged Coastal.

On the other hand, the record is not at all

specific about the prices charged. Nowhere does it contain

figures, or even estimates, of the actual prices either

Coastal, or Coastal's competitors paid for fuel oil. At the

same time, it contains other evidence that militates against

an eventual finding of unlawful behavior. Cross-examination

of Coastal's witnesses revealed that, when CAPECO officials

told them CAPECO charged Coastal's competitors less, the

officials immediately added that the price differences

reflected "different contract" terms. The evidence also

shows that CAPECO's per barrel prices diminished as

customers ordered in greater volumes -- a kind of volume-

related pricing apparently commonplace in the oil industry.

Coastal apparently paid "spot sales" prices for oil, and it

may have bought in somewhat lower volumes. The Robinson-

Patman Act does not prohibit volume-related price

differences that reflect genuine cost differences. See 15

U.S.C. 13(a); FTC v. Morton Salt Co., 334 U.S. 37, 48

(1948); Frederick M. Rowe, Price Discrimination Under the

-4-
4

Robinson-Patman Act, ch. 10 at 265-321 (1962). Nor does it

prohibit price differences between spot sales and long-term

contract sales that reflect different market conditions.

See Texas Gulf Sulphur Co. v. J. R. Simplot Co., 418 F.2d

793, 806-08 (9th Cir. 1969); Rowe, supra, 4.2 at 50, ch.

11 at 322-29.

It may well be that, at trial, Coastal would

produce more specific price information, CAPECO would fail

to demonstrate "cost justification," and, the potential

cost, or market, related differences between "spot" and

"contract" sales would evaporate. But, the opposite may also

prove true. At this stage, a court could reasonably want to

see more evidence -- insisting that the plaintiff make a

somewhat stronger, more specific, showing of a likely

violation of law, including a probability of overcoming what

the evidence now shows as plausible defenses -- before

finding a likelihood of success on the merits. See, e.g.,

Atari Games Corp. v. Nintendo of America, Inc., 975 F.2d

832, 837 (Fed. Cir. 1992) (plaintiff must show "likelihood

that it will overcome . . . defense"); New England Braiding

Co. v. A.W. Chesterton Co., 970 F.2d 878, 882-83 (Fed. Cir.

1992) (same). But cf. Dallas Cowboys Cheerleaders, Inc. v.

-5-
5

Scoreboard Posters, Inc., 600 F.2d 1184, 1188 (5th Cir.

1979).

For another thing, the district court did not err

in finding that Coastal would not suffer "irreparable harm"

that a later damage award could not avoid. On the one hand,

Coastal presented two witnesses who testified to such harm.

These Coastal executives said, for example, that:

(1) "[F]uel from CAPECO is the only practical way
to purchase fuel in the harbor."

(2) "[I]t's absolutely imperative that you have
the supply from CAPECO refinery it's the only
locally produced product from San Juan harbor, and
without that access on equal basis to that supply
you cannot compete in San Juan harbor."

(3) "[W]e are sustaining losses in here, . . . I
feel it's damaging our trade mark, and our brand
and our reputation, and I don't think we can
continue doing business like this."

(4) Withdrawal from San Juan Harbor "would serve
irreparable damage upon Coastal's name which goes
back to 1915 in the form of serving [marine] . . .
fuel in 20 other ports that we supply. . . ."

On the other hand, cross-examination revealed that

Coastal is a subsidiary of a large firm (of the same name)

that sells marine fuel in 20 other ports; that, on at least

three occasions, Coastal has imported marine fuel to San

Juan (for resale) from its parent company's refinery in

Aruba; that CAPECO stored at least some of this imported

fuel oil for Coastal in CAPECO's San Juan facilities; that

-6-
6

Coastal also, on at least one occasion, purchased fuel oil

from Sun Oil, apparently in Puerto Rico; and that Coastal's

witnesses (despite their assurances that importation was not

possible) were not familiar with the relevant prices.

Given this record, we cannot second-guess the

district court's judgment that Coastal had shown neither an

inability to survive (during the course of the litigation)

on imported oil, nor a potential loss of "goodwill" that a

later damage award could not readily compensate. Appellants

presently point out that the courts possess the power to

issue a business-preserving injunction, at least where a

future damage remedy may prove inadequate. Compare, e.g.,

Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205

(2d Cir. 1970) (injunction proper to prevent termination of

business) and Jacobson & Co. v. Armstrong Cork Co., 548 F.2d

438, 444-45 (2d Cir. 1977) (injunction proper to prevent

loss of customers) with Kenworth of Boston, Inc. v. Paccar

Financial Corp., 735 F.2d 622, 625 (1st Cir. 1984) (no real

threat of business closure) and Goldie's Bookstore, Inc. v.

Superior Court of California, 739 F.2d 466, 472 (9th Cir.

1984) (insufficient evidence of "goodwill" loss). But, we

also agree with the district court that plaintiff failed to

-7-
7

demonstrate the existence of circumstances that would

require the exercise of that power in this case.

The upshot is a preliminary injunction record that

tends to show price differences, that is unclear about

amounts, that suggests the existence of significant

defenses, and that is not particularly convincing in respect

to "irreparable harm." Were "price differences" an

unmitigated evil, the case for a preliminary injunction

would be stronger. But, as we have previously stated, those

who wrote the Robinson-Patman Act had pro-competitive (as

well as pro-competitor) objectives in mind. See Monahan's

Marine Inc. v. Boston Whaler, Inc., 866 F.2d 525, 529 (1st

Cir. 1989). And, price differences, based upon cost

savings, will sometimes have a pro-competitive impact. Cf.

id. (recognizing anti-competitive dangers of forbidding

selective, but non-predatory, price cutting). Thus, we

understand the district court's hesitancy to issue a

preliminary injunction, not only without a stronger showing

of "irreparable harm," but also without knowing more about

the facts of the case. Its decision, in our view, is

lawful.

We add two further points. First, Coastal's

complaint also asserts that CAPECO and Coastal's competitors

-8-
8

violated the Sherman Act, 15 U.S.C. 1. Coastal's request

for a preliminary injunction, however, rested almost

entirely upon its Robinson-Patman Act claim. And, Coastal,

on this appeal, does not contend that it has made an

evidentiary showing sufficient to warrant a preliminary

injunction on the Sherman Act claim. Cf. Monahan's Marine,

866 F.2d at 529 ("evidence of a violation of the Robinson-

Patman Act, showing injury only to competitors, does not

automatically show a violation of the Sherman Act as well").

Second, all three defendants (CAPECO and Coastal's

two competitors) asked the district court to dismiss

Coastal's Robinson-Patman Act claims on the ground that

Coastal could not show that either a high-price sale to

Coastal, or a low-price sale to a competitor, took place "in

[interstate] commerce." 15 U.S.C. 13(a); Standard Oil Co.

v. FTC, 340 U.S. 231, 236-37 (1951); Mayer Paving & Asphalt

Co. v. General Dynamics Corp., 486 F.2d 763, 766 (7th Cir.

1973), cert. denied, 414 U.S. 1146 (1974); I Phillip Areeda

& Donald F. Turner, Antitrust Law, 233 at 248 (1978);

Rowe, supra, 4.9 at 79. The district court denied the

motion. The defendant competitors ask us now to say that,

in doing so, the court was wrong.

-9-
9

We do not reach the interstate commerce question

in the context of this appeal. The legality of the order

from which Coastal appeals -- the denial of the preliminary

injunction -- does not depend upon the "in commerce" issue.

The parties that wish to raise the issue, the competitors,

are defendants; and, they have not filed a notice of appeal.

Fed. R. App. P. 3, 4. And, in any event, the order of which

they complain, the refusal to grant their motion to dismiss,

is not an appealable order. See Rodriguez v. Banco Central,

790 F.2d 172, 177 (1st Cir. 1986) (criteria for an

appealable collateral order).

For these reasons, the decision of the district

court is

Affirmed.

-10-
10