USCA1 Opinion

 

 April 6, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2301 COASTAL FUELS OF PUERTO RICO, INC., Plaintiff, Appellant, v. CARIBBEAN PETROLEUM CORPORATION, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge.] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Cyr, Circuit Judges. ______________ ____________________ Michael S. Yauch with whom John F. Malley, III, McConnell, __________________ ______________________ __________ Valdes, Kelly, Sifre, Griggs & Ruiz-Suria and Neil O. Bowman were on __________________________________________ _______________ brief for Coastal Fuels of Puerto Rico, Inc. Ruben T. Nigaglioni with whom Jorge A. Antongiorgi, and Ledesma, ___________________ ____________________ ________ Palou & Miranda were on brief for Caribbean Petroleum Corporation. _______________ Juan F. Doval with whom Jorge R. Jimenez and Miguel Garcia Suarez _____________ ________________ ____________________ were on brief for Harbor Fuel Service, Inc. and Caribbean Fuel Oil Trading, Inc. ____________________ April 6, 1993 April 6, 1993 ____________________ 1 BREYER, Chief Judge. Coastal Fuels of Puerto Rico ___________ buys marine fuel oil in San Juan and resells that oil to ocean-going liners at berth in San Juan Harbor. It brought this antitrust action against its local fuel oil supplier, Caribbean Petroleum Corporation ("CAPECO"), and two of its competitors, both of whom CAPECO supplies. Coastal basically claims that ever since October 1991, when Coastal entered the San Juan market, CAPECO has charged Coastal's two competitors prices that are significantly lower than the prices it charges Coastal. This unjustified price difference, says Coastal, violates the Robinson-Patman Act, 15 U.S.C. 13, and the Sherman Act, 15 U.S.C. 1. Coastal asked the district court to enter a preliminary injunction "requiring CAPECO to provide fuel oil to Coastal on terms and conditions no less favorable than those made available" to Coastal's competitors. The district court decided not to enter the injunction. Coastal appeals. We affirm the decision. In deciding whether to issue a preliminary injunction, a district court must ask whether the plaintiff is likely to succeed on the merits, whether the plaintiff will otherwise suffer irreparable harm, whether the benefits of an injunction will, on balance, outweigh the burdens, and whether an injunction is consistent with the "public interest." Planned Parenthood League v. Bellotti, 641 F.2d __________________________ ________ 1006, 1009 (1st Cir. 1981); Boston Celtics Ltd. Partnership _______________________________ v. Shaw, 908 F.2d 1041, 1048 (1st Cir. 1990). This court ____ will normally give the district court considerable leeway in making its decision, at least where, as here, the decision rests upon an exercise of judgment and a record that is incomplete. Indeed, normally we will reverse the district court's decision on such matters only if we are convinced that it "abused its discretion" or committed a "clear error" of fact or related law. See, e.g., Massachusetts Ass'n of ___ ____ _______________________ Older Americans v. Sharp, 700 F.2d 749, 751-52 (1st Cir. _______________ _____ 1983). We can find no such error in the present case. For one thing, Coastal's "likelihood of success on the merits," is, at best, uncertain. On the one hand, Coastal presented witnesses who testified to facts indicating significant price differences. They said that: (1) After Coastal entered the San Juan market, the resale prices charged by its competitors (to the ships) dropped by nearly $1 per barrel; (2) Coastal's competitors' resale prices were at, or below, the prices CAPECO charged Coastal; (3) Coastal, though it had expected to earn profits, lost $1.3 million during its first ten months of operations; -3- 3 (4) CAPECO (perhaps by mistake) once sent Coastal an invoice showing a price of $1.45 per barrel less than the price CAPECO charged Coastal; ____ (5) Two CAPECO executives told Coastal executives that CAPECO was charging Coastal's competitors lower prices than CAPECO charged Coastal. On the other hand, the record is not at all specific about the prices charged. Nowhere does it contain figures, or even estimates, of the actual prices either Coastal, or Coastal's competitors paid for fuel oil. At the same time, it contains other evidence that militates against an eventual finding of unlawful behavior. Cross-examination of Coastal's witnesses revealed that, when CAPECO officials told them CAPECO charged Coastal's competitors less, the officials immediately added that the price differences reflected "different contract" terms. The evidence also __________________ _____ shows that CAPECO's per barrel prices diminished as customers ordered in greater volumes -- a kind of volume- related pricing apparently commonplace in the oil industry. Coastal apparently paid "spot sales" prices for oil, and it may have bought in somewhat lower volumes. The Robinson- Patman Act does not prohibit volume-related price differences that reflect genuine cost differences. See 15 ___ U.S.C. 13(a); FTC v. Morton Salt Co., 334 U.S. 37, 48 ___ ________________ (1948); Frederick M. Rowe, Price Discrimination Under the _______________________________ -4- 4 Robinson-Patman Act, ch. 10 at 265-321 (1962). Nor does it ____________________ prohibit price differences between spot sales and long-term contract sales that reflect different market conditions. See Texas Gulf Sulphur Co. v. J. R. Simplot Co., 418 F.2d ___ _______________________ __________________ 793, 806-08 (9th Cir. 1969); Rowe, supra, 4.2 at 50, ch. _____ 11 at 322-29. It may well be that, at trial, Coastal would produce more specific price information, CAPECO would fail to demonstrate "cost justification," and, the potential cost, or market, related differences between "spot" and "contract" sales would evaporate. But, the opposite may also prove true. At this stage, a court could reasonably want to see more evidence -- insisting that the plaintiff make a somewhat stronger, more specific, showing of a likely violation of law, including a probability of overcoming what the evidence now shows as plausible defenses -- before finding a likelihood of success on the merits. See, e.g., ___ ____ Atari Games Corp. v. Nintendo of America, Inc., 975 F.2d __________________ __________________________ 832, 837 (Fed. Cir. 1992) (plaintiff must show "likelihood that it will overcome . . . defense"); New England Braiding ____________________ Co. v. A.W. Chesterton Co., 970 F.2d 878, 882-83 (Fed. Cir. ___ ___________________ 1992) (same). But cf. Dallas Cowboys Cheerleaders, Inc. v. _______ _________________________________ -5- 5 Scoreboard Posters, Inc., 600 F.2d 1184, 1188 (5th Cir. ________________________ 1979). For another thing, the district court did not err in finding that Coastal would not suffer "irreparable harm" that a later damage award could not avoid. On the one hand, Coastal presented two witnesses who testified to such harm. These Coastal executives said, for example, that: (1) "[F]uel from CAPECO is the only practical way to purchase fuel in the harbor." (2) "[I]t's absolutely imperative that you have the supply from CAPECO refinery it's the only locally produced product from San Juan harbor, and without that access on equal basis to that supply you cannot compete in San Juan harbor." (3) "[W]e are sustaining losses in here, . . . I feel it's damaging our trade mark, and our brand and our reputation, and I don't think we can continue doing business like this." (4) Withdrawal from San Juan Harbor "would serve irreparable damage upon Coastal's name which goes back to 1915 in the form of serving [marine] . . . fuel in 20 other ports that we supply. . . ." On the other hand, cross-examination revealed that Coastal is a subsidiary of a large firm (of the same name) that sells marine fuel in 20 other ports; that, on at least three occasions, Coastal has imported marine fuel to San Juan (for resale) from its parent company's refinery in Aruba; that CAPECO stored at least some of this imported fuel oil for Coastal in CAPECO's San Juan facilities; that -6- 6 Coastal also, on at least one occasion, purchased fuel oil from Sun Oil, apparently in Puerto Rico; and that Coastal's witnesses (despite their assurances that importation was not possible) were not familiar with the relevant prices. Given this record, we cannot second-guess the district court's judgment that Coastal had shown neither an inability to survive (during the course of the litigation) on imported oil, nor a potential loss of "goodwill" that a later damage award could not readily compensate. Appellants presently point out that the courts possess the power to issue a business-preserving injunction, at least where a future damage remedy may prove inadequate. Compare, e.g., _______ ___ Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 ___________________ ______________ (2d Cir. 1970) (injunction proper to prevent termination of business) and Jacobson & Co. v. Armstrong Cork Co., 548 F.2d ___ ______________ __________________ 438, 444-45 (2d Cir. 1977) (injunction proper to prevent loss of customers) with Kenworth of Boston, Inc. v. Paccar ____ _________________________ ______ Financial Corp., 735 F.2d 622, 625 (1st Cir. 1984) (no real ________________ threat of business closure) and Goldie's Bookstore, Inc. v. ___ ________________________ Superior Court of California, 739 F.2d 466, 472 (9th Cir. _____________________________ 1984) (insufficient evidence of "goodwill" loss). But, we also agree with the district court that plaintiff failed to -7- 7 demonstrate the existence of circumstances that would require the exercise of that power in this case. The upshot is a preliminary injunction record that tends to show price differences, that is unclear about amounts, that suggests the existence of significant defenses, and that is not particularly convincing in respect to "irreparable harm." Were "price differences" an unmitigated evil, the case for a preliminary injunction would be stronger. But, as we have previously stated, those who wrote the Robinson-Patman Act had pro-competitive (as ____ well as pro-competitor) objectives in mind. See Monahan's __ ___ _________ Marine Inc. v. Boston Whaler, Inc., 866 F.2d 525, 529 (1st ___________ ____________________ Cir. 1989). And, price differences, based upon cost savings, will sometimes have a pro-competitive impact. Cf. ___ id. (recognizing anti-competitive dangers of forbidding ___ selective, but non-predatory, price cutting). Thus, we understand the district court's hesitancy to issue a preliminary injunction, not only without a stronger showing of "irreparable harm," but also without knowing more about the facts of the case. Its decision, in our view, is lawful. We add two further points. First, Coastal's complaint also asserts that CAPECO and Coastal's competitors -8- 8 violated the Sherman Act, 15 U.S.C. 1. Coastal's request for a preliminary injunction, however, rested almost entirely upon its Robinson-Patman Act claim. And, Coastal, on this appeal, does not contend that it has made an evidentiary showing sufficient to warrant a preliminary injunction on the Sherman Act claim. Cf. Monahan's Marine, ___ ________________ 866 F.2d at 529 ("evidence of a violation of the Robinson- Patman Act, showing injury only to competitors, does not automatically show a violation of the Sherman Act as well"). Second, all three defendants (CAPECO and Coastal's two competitors) asked the district court to dismiss Coastal's Robinson-Patman Act claims on the ground that Coastal could not show that either a high-price sale to Coastal, or a low-price sale to a competitor, took place "in [interstate] commerce." 15 U.S.C. 13(a); Standard Oil Co. ________________ v. FTC, 340 U.S. 231, 236-37 (1951); Mayer Paving & Asphalt ___ ______________________ Co. v. General Dynamics Corp., 486 F.2d 763, 766 (7th Cir. ___ _______________________ 1973), cert. denied, 414 U.S. 1146 (1974); I Phillip Areeda _____________ & Donald F. Turner, Antitrust Law, 233 at 248 (1978); ______________ Rowe, supra, 4.9 at 79. The district court denied the _____ motion. The defendant competitors ask us now to say that, in doing so, the court was wrong. -9- 9 We do not reach the interstate commerce question in the context of this appeal. The legality of the order from which Coastal appeals -- the denial of the preliminary injunction -- does not depend upon the "in commerce" issue. The parties that wish to raise the issue, the competitors, are defendants; and, they have not filed a notice of appeal. Fed. R. App. P. 3, 4. And, in any event, the order of which they complain, the refusal to grant their motion to dismiss, is not an appealable order. See Rodriguez v. Banco Central, ___ _________ _____________ 790 F.2d 172, 177 (1st Cir. 1986) (criteria for an appealable collateral order). For these reasons, the decision of the district court is Affirmed. ________ -10- 10