**CONSOLIDATED TERMINAL SYSTEMS, INC., Plaintiff,**

v.

**ITT WORLD COMMUNICATIONS, INC., RCA Global Communications, Inc., Western Union International, Inc., TRT Telecommunications Corporation and FTC Communications, Inc., Defendants.**

No. 80 Civ. 5788(MEL).

United States District Court, S. D. New York.

March 25, 1982.

David Jaroslawicz and Mark L. Stanton, New York City, for plaintiff.

LeBoeuf, Lamb, Leiby & Macrae, New York City, for defendant ITT World Communications, Inc.

Cahill, Gordon & Reindel, New York City, for defendant RCA Global Communications, Inc.; H. Richard Schumacher, Carl A. Haberbusch, Andrew L. Deutsch, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Western Union International, Inc.

George A. Burrell, P.C., New York City, for defendant TRT Telecommunications

Corp.; Covington & Burling E. Edward Bruce, Thomas William Mayo, Washington, D.C., of counsel.

Hughes, Hubbard & Reed, New York City, for defendant FTC Communications, Inc.; James B. Kobak, Jr., New York City, of counsel.

LASKER, District Judge.

Consolidated Terminal Systems, Inc. ("Consolidated"), claims that defendants' provision of telex terminals and related equipment to international telex subscribers at allegedly nonremunerative active rates violates the Sherman Act and the Communications Act.

Defendants are the five International Record Carriers ("IRCs") which have been authorized by the Federal Communications Commission ("FCC") to provide international telex transmission service from points within the United States to points abroad. This service is ordinarily provided in conjunction with telex circuits operated by the Western Union Telegraph Company ("Western Union") or another domestic carrier. The domestic carrier provides the domestic leg of the service and an interconnected IRC furnishes the international portion. In certain designated "gateway" cities, telex users place calls directly with an IRC for overseas transmission.

The IRCs also provide their customers in gateway cities with telex equipment, consisting of teleprinters, terminals, tie-lines, and related supplies and service. Consolidated is in the business of supplying telex terminals and related equipment to persons using telex service. Consolidated, however, is not an IRC and provides no actual telex transmission service.

Until recently, the IRCs provided their telex transmission service and related equipment according to a "unified" rate structure by which the companies recovered their costs for related equipment through the charges they imposed for their telex transmission service. The FCC approved that practice in *Mackay Radio & Telegraph Co., Inc.*, 26 F.C.C. 557 (Bd. of Commissioners 1958), *aff'd*, 26 F.C.C. 566 (1959). How-ever, on February 15, 1980, the FCC directed the IRCs to "unbundle" their rates and to file revisions of their tariffs establishing charges for the provision of telex equipment which would reflect the actual cost associated with the service and equipment being offered. *Interface of the International Telex Service With the Domestic Telex and TWX Services*, 76 F.C.C.2d 61 (February 15, 1980). In April, 1980, the IRCs filed revised telex tariffs which purported to set forth cost-based rates for telex service, the telex terminal, and related equipment and supplies. Subsequently, the FCC determined that terminal equipment should be detariffed. *Interface of the International Telex Service with the Domestic Telex and TWC Service*, 86 F.C.C.2d 411 (1981). *See generally Western Union Telegraph Company v. F. C. C.*, 674 F.2d 160 (2d Cir. 1982).

Consolidated alleges that the IRCs filed tariffs which did not reflect an honest unbundling of rates (Amended Complaint ¶ 59), that the IRCs violated the filed tariffs themselves, and that the IRCs have discriminated in price in violation of the Communications Act, 47 U.S.C. § 202. (Amended Complaint ¶¶ 21, 48, 50). Consolidated further alleges that the IRCs have violated the antitrust laws by subsidizing their prices for telex terminals and related equipment from revenues derived from the provision of international telex transmission service. It claims that this constitutes an unreasonable extension of the IRCs privileged status as FCC-authorized carriers. (Amended Complaint ¶¶ 18, 19). Consolidated also alleges that the IRCs have entered into unlawful tie-in agreements with their customers whereby each IRC provides terminals and equipment free or below cost on condition that the customer purchase international telex transmission service from the particular IRC. (Amended Complaint, ¶ 20). Consolidated claims that the effect of the IRCs' alleged conduct has been that it and other independent suppliers of telex terminals and related equipment have been unable to compete in the lease or sale of such goods to international telex subscrib-

ers. (Amended Complaint ¶ 23). It seeks relief under the Sherman Act, 15 U.S.C. §§ 1, 2, 14, 15 and 26, and under the Communications Act, 47 U.S.C. §§ 206 and 401(b).

The IRCs, except for Western Union Communications, Inc., move pursuant to Fed.R.Civ.Pr. 12(b)(1) and 12(b)(6) to dismiss the complaint on the grounds that the antitrust allegations fail to state a claim upon which relief can be granted and the Communications Act claims are within the primary jurisdiction of the FCC.

## I.

The IRCs argue that Consolidated's claim under § 2 of the Sherman Act is stated in conclusory terms and contradicts other allegations of the complaint. Specifically, the IRCs emphasize that in its § 2 count, Consolidated fails to allege that there is a specific intent or a dangerous probability that the IRCs will be able to control prices or destroy competition in the equipment market. The IRCs contend that Consolidated cannot make such an allegation because the equipment used by IRC subscribers is a small percentage of the total amount of such equipment in use. They also argue that Consolidated has alleged no factual basis from which a separate market for telex equipment used by IRC subscribers could be established. In addition, it is argued that Consolidated has failed to allege the market share of any particular defendant and thus that there is no basis for an inference that any IRC controls a share of the equipment market sufficient to establish the probability of successful monopolization. The IRCs note that any specific intent to monopolize is contradicted by Consolidated's own allegations that the IRC telex service market is intensely competitive and that the reduced equipment prices are motivated by the desire to sell telex service.

Consolidated responds that it has stated a claim under § 2 of the Sherman Act by alleging that the IRCs have extended their monopoly power or privileged position in the international telex transmission market to the equipment market by subsidizing the cost of equipment with monopoly profits from the transmission market. Consolidated also contends that if its Communications Act claims and its § 1 claim go forward, it would not serve any useful purpose to dismiss the § 2 claim, at least until it has an opportunity to develop the claim through discovery.

## II.

Defendants' motion to dismiss Consolidated's claim under § 2 of the Sherman Act is granted. The complaint merely alleges in conclusory terms that the IRCs have conspired to monopolize the markets for international telex business and the business in peripheral equipment and that the IRCs together account for between 98 and 100 percent of the market. The critical flaw of the allegations under § 2 is that the complaint nowhere alleges the market share of any particular defendant.

In order to state a valid claim for monopolization under § 2, a plaintiff must allege as a threshold requirement that the defendant enjoys monopoly power in the relevant market. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966). Similarly, in order to state a claim under § 2 for attempted monopolization, a plaintiff must allege (1) a dangerous probability of success in monopolizing a given product market and (2) a specific intent to destroy competition or control prices in the relevant market. *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 840 (2d Cir. 1980).

Consolidated's allegations that the IRCs account for between 98 and 100 percent of the market assumes that the defendants' *combined* market power is the relevant datum. That approach, however, might be termed tautological. In light of the fact that Consolidated has named as defendants every company authorized to compete in the market for international telex transmission service, it is not surprising that Consolidated is also able to allege that the defendants account for 98 to 100 percent of the business in that market. But an oligopoly, or a

shared monopoly, does not in itself violate § 2 of the Sherman Act. Rather, in order to sustain a charge of monopolization or attempted monopolization, a plaintiff must allege the necessary market domination of a particular defendant. *See Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co., supra* at 841; *Levitch v. Columbia Broadcasting System, Inc.*, 495 F.Supp. 649, 668 (S.D.N.Y.1980); *American Tel. & Tel. Co. v. Delta Communications Corp.*, 408 F.Supp. 1075 (S.D.Miss.1976), *aff'd per curiam*, 579 F.2d 972 (5th Cir. 1978), *modified on other grounds per curiam*, 590 F.2d 100 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). Consolidated has not made any such allegation. Since there is no allegation that any particular defendant has monopolized or attempted to monopolize the international telex transmission business, Consolidated's contention that defendants' pricing policies for peripheral equipment violate § 2 because they are an extension of defendants' monopoly or privileged status in the international telex transmission business cannot stand. And, for the same reasons, the complaint is insufficient to state a claim for monopolization or attempted monopolization of the terminal and equipment market—the only market in which Consolidated competes.

Moreover, Consolidated fails to allege sufficient facts from which it can be inferred that the market for equipment used by international telex customers (as opposed to telex users generally) constitutes a relevant market for determining the control of price and competition. "[C]ommodities reasonably interchangeable by consumers for the same purpose make up that 'part of the trade or commerce,' monopolization of which may be illegal." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 1007, 100 L.Ed. 1264 (1956). Consolidated has not challenged defendants' assertion, supported by judicial recognition of the ability of domestic telex users to directly access the IRCs, *see ITT World Communications, Inc. v. FCC*, 635 F.2d 32, 35–37 (2d Cir. 1980), that the terminals and teleprinters used by its customers are functionally interchangeable with those used by domestic telex users and therefore that even taking into consideration the defendants' combined share of the equipment market, it is nevertheless minimal.

Nor is the allegation of conspiracy among the defendants sufficient to state a claim under § 2 when, as here, the plaintiff has not specified any concerted activity or agreement to act in concert to achieve unlawful goals. Furthermore, the absence of an allegation as to an individual's share of the purported market precludes a claim of conspiracy to monopolize. *Levitch v. Columbia Broadcasting System, Inc., supra* at 668.

Since Consolidated has failed to allege that any defendant enjoys monopoly power in a relevant product market, or that any defendant has the specific intent and the dangerous probability of success for monopolizing a relevant product market, the complaint fails to state a claim under § 2 of the Sherman Act.

### III.

The IRCs contend that Consolidated's first claim, that the IRCs are providing telex terminals and related equipment for free or at prices below cost, amounts to an allegation of predatory pricing which does not state a claim under § 1 of the Sherman Act. The IRCs argue that the allegation of predatory pricing in this case does not state a claim under § 2 because Consolidated has not and cannot plead a specific intent to monopolize or a dangerous probability that the terminal and related equipment market will be monopolized.

The IRCs next maintain that Consolidated's claim that they are unlawfully "tying" the supply of free or below cost terminals and equipment to the purchase of telex transmission service, does not satisfy the requirement of *Yentsch v. Texaco, Inc.*, 630 F.2d 46 (2d Cir. 1980) that the challenged tying arrangement have anticompetitive effects in the tied product market and that the defendants have sufficient economic power in the typing product market to coerce purchaser acceptance of the tied

product. The IRCs contend that Consolidated has failed to allege any anticompetitive effect in the tied product market (the provision of telex transmission service) and that, in any event, Consolidated has no standing to complain of any effect in that market because Consolidated's activities are restricted to the tying market (the provision of terminals and related equipment). According to the IRCs, it is an established principle in antitrust law that the "target area" of any illegal tying arrangement is the *tied* product market.

The IRCs also argue that Consolidated has failed to allege sufficient economic power in the tying product market because Consolidated only alleges that the IRCs control the provision of international telex service, the tied product. The IRCs contend that Consolidated cannot plead or prove that defendants have coercive power in the tying market because the telex equipment used by IRC subscribers is but a tiny fraction of the total amount of such equipment being used generally. The IRCs additionally contend that their status as FCC authorized providers of international telex service is irrelevant to the question of their power in the equipment market because FCC authorization is not required before entry into the equipment market.

Consolidated argues that defendants' foreclosure of the equipment market through the tie-in arrangements with their customers is an unreasonable restraint of trade under § 1 of the Sherman Act regardless of whether it also amounts to a per se violation. According to Consolidated, it is alleging a rule of reason, rather than a per se § 1 violation, and therefore defendants' reliance on cases setting forth the requirements for a per se claim such as anticompetitive effect in the tied product area is misplaced. Consolidated contends that under a rule of reason approach, it need only set forth allegations that defendants' tying agreements have specific unreasonable effects on competition which are causing harm to Consolidated. Moreover, Consolidated maintains that the requirement that the tie-in be coercive is satisfied by the alleged fact that the equipment at issue is not available on the same basis to customers who do not use the IRCs' telex services.

### IV.

The IRCs have persuasively demonstrated that the relevant focus for tie-in claims has ordinarily been the market for the *tied* product, here the international telex transmission service. *See, e.g., Yentsch v. Texaco, Inc.,* 630 F.2d 46, 58 (2d Cir. 1980); *Ungar v. Dunkin' Donuts of America,* 531 F.2d 1211, 1221 n.7a (3d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976); *Southern Concrete Co. v. United States Steel Corp.,* 535 F.2d 313, 317 (5th Cir. 1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); *David R. McGeorge Car Co. v. Leyland Motor Sales, Inc.,* 504 F.2d 52, 58 (4th Cir. 1974). Such a focus makes sense in the ordinary case: the purpose of the tie is to coerce acceptance of the tied product by conditioning the availability of the tying product (over which the defendant has dominant market power or which has uniquely attractive attributes) on acceptance of the tied product, thus it is ordinarily the tied product market in which competition is foreclosed. In such circumstances, the purchaser chooses the tied product, not through open choice in a competitive market, but rather as a condition to enjoying the benefits of the tying product. Because such a practice "serve[s] hardly any purpose beyond the suppression of competition," *Standard Oil Co. of California v. United States,* 337 U.S. 293, 305–06, 69 S.Ct. 1051, 1058, 93 L.Ed. 1371 (1949), tie-in arrangements are deemed "unreasonable in and of themselves whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product," *Northern Pacific Ry. Co. v. United States,* 356 U.S. 1, 6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958), and a not insubstantial amount of commerce is affected.

■ It is at least clear that Consolidated, as a competitor in the market for the tying product—terminals and related supplies—

has no standing to complain of the suppression of competition in the market for the tied product. *See, e.g., Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.*, 454 F.2d 1292, 1295 (2d Cir. 1971), *cert. denied*, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972); *Southern Concrete Co. v. United States Steel Corp., supra* at 317. Accordingly, it cannot state a per se claim with respect to the alleged tie-in arrangements.

▮ Consolidated argues, however, that it need not have standing to challenge anticompetitive effects in the tied product market because it is not alleging a per se claim. The argument deserves examination. Consolidated is correct that a distinction exists between per se and rule of reason tie-in claims and that to make out a tie-in claim under the rule of reason it need not satisfy all the criteria laid down in cases like *Yentsch*, which dealt with per se claims. *See, e.g., Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 499–500, 89 S.Ct. 1252, 1256–1257, 22 L.Ed.2d 495 (1969); *Ware v. Trailer Mart, Inc.*, 623 F.2d 1150, 1153–54 (6th Cir. 1980); *In re Data General Corp. Antitrust Litigation*, 490 F.Supp. 1089, 1101 (N.D.Cal.1980). However, while these decisions support Consolidated's premise that it need not satisfy the requirements for a per se claim in order to make out a claim under § 1 against a tying arrangement, none of the cited cases considered the question presented here— whether a competitor in the market for the allegedly tying goods has standing to complain of the tying arrangement.

Consolidated rests its standing to challenge the tying arrangement on the proposition that, as a competitor in the market for the tying product, it is directly injured by the alleged practice by which international telex subscribers are offered free or below cost equipment and supplies in return for a promise to use the transmission service of a particular IRC. At least one court has found that an allegation of direct injury from a tying arrangement by one in Consolidated's position states a claim under § 1. *See In re Uranium Antitrust Litigation*, 473 F.Supp. 393, 401–03 (N.D.Ill.1979).

We agree with the analysis in *In re Uranium Antitrust Litigation, supra*, to the extent that it recognizes that a tying product competitor may suffer economic injury in these circumstances. Indeed, this type of injury to the tying product competitor, resulting when the tying product is offered free or at unremunerative rates in an industry with few sellers, has been recognized by leading commentators in the area. *See, e.g.*, Turner, *The Validity of Tying Arrangements Under the Antitrust Laws*, 72 Harv.L.Rev. 50, 65 (1958). However, we do not agree with *In re Uranium Antitrust Litigation* that an allegation that this type of injury has occurred is sufficient to establish a claim under § 1 of the Sherman Act.

As we analyze the allegations of this case, Consolidated has no standing to challenge the tying arrangements it has alleged because its injury does not flow from the alleged fact that the availability of the tying product is conditioned on acceptance of the tied product, but rather from the alleged discounting of the tying product itself. Under this analysis, Consolidated, while framing its claim in terms of a tie-in claim, is actually complaining of predatory pricing in the terminal and related equipment market. This conclusion is supported by the fact that Consolidated would suffer the same injury whether or not the allegedly discounted terminals and equipment were conditioned on acceptance of the particular IRC's transmission service. The tie to transmission service is thus analytically irrelevant to Consolidated's injury, which flows directly from the pricing policies allegedly pursued by the IRCs in the terminal and equipment market. Indeed, the only new factor caused by the alleged tie is possible foreclosure of competition in the international transmission service market, a market in which Consolidated does not compete and in which it has no standing to complain of any foreclosure of competition.

Moreover, it can be argued that this analysis is consistent with the focus in per se tie-in decisions as to the effect of a tie-in on competition in the tied product market.

Analytically, the injury to a tying product competitor cannot result from the tie itself, whether the claim is a per se *or* rule of reason claim. This is so because in such circumstances the availability of the tying product is conditioned on acceptance of the tied product, not vise versa. For example, if a seller of flashlights and batteries offers free batteries on condition that his flashlights are purchased, the flashlight consumer desiring free batteries may choose to buy the particular flashlight in order to get the batteries. Such a choice would not be *because* of the tie of the batteries to flashlights, but *in spite* of the tie. The customer would prefer, if he could, to obtain free batteries and still retain an open choice as to which flashlight to purchase—but he is not given the choice. Thus, the foreclosure of competition caused by *the tie* relates to the tied product market, the flashlight market, and not to the *tying* products, the batteries. Any foreclosure of competition in the battery market would flow from the fact that the batteries are free, and not from their tie to the flashlight. Indeed, the tie would tend to deter some customers from taking the free batteries, since they might have a strong preference for another flashlight. In fact to this extent, the tie can be said to lessen the suppressive effect of the giveaway on competition in the battery market. In sum, while the tying competitor may suffer injury in a market structure where such a tie is possible, the cause of the injury is necessarily independent of the tie itself.

Since upon examination Consolidated's claim with respect to the alleged tie-in arrangement reduces itself to a claim of predatory pricing, the claim must be made under § 2 of the Sherman Act. *See* 3 Areeda & Turner, Antitrust Law ¶ 711, at 150 n.1 (1978); Williamson, Predatory Pricing: A Strategic and Welfare Analysis, 78 Yale L.J. 284, 284 n.1 (1977). As concluded above, Consolidated's complaint fails to state a claim under § 2.

■ In addition, even if we were to recognize a claim under § 1 of these circumstances, we would nevertheless grant de-

fendants' motion to dismiss. Under a rule of reason analysis, it is still necessary to plead unreasonable effects in a particular market area. As discussed above, Consolidated has failed to allege facts from which it can be inferred that the market for equipment used by international telex subscribers (as opposed to telex users generally) constitutes a relevant market for determining whether the alleged practices effect an unreasonable restraint of trade. Consequently, Consolidated has also failed to state a claim under a rule of reason analysis.

## V.

Defendants next maintain that, if the antitrust claims are dismissed, the Communications Act claims should be referred to the FCC under the doctrine of primary jurisdiction. The IRCs emphasize that, as reflected by its Interface Order, the FCC is intimately familiar with the issues of the tariffs for equipment prices about which Consolidated complains and that a primary jurisdiction referral is especially appropriate here because the FCC is currently investigating the very same issues as are raised by Consolidated's complaint.

Consolidated responds that its claims should not be referred to the FCC because the Communications Act permits a suit for damages to be brought in district court. Consolidated contends that a primary jurisdiction referral is inappropriate where violations of a tariff, rather than the reasonableness of the tariff itself, are alleged, and that in FCC proceedings, they would not be able to obtain attorneys' fees, costs and injunctive relief to which they are statutorily entitled. In addition, Consolidated notes that the FCC would have no jurisdiction over their antitrust claims and could not grant them their right to a jury trial.

■ In light of the dismissal of the antitrust claims, we agree with the IRCs that the Communications Act claims should be referred to the FCC under the doctrine of primary jurisdiction. The doctrine of primary jurisdiction is intended to accommodate the "complementary roles of courts

and administrative agencies," *Far East Conference v. United States*, 342 U.S. 570, 575, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952), by ensuring that "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Id.* at 574, 72 S.Ct. at 494.

Consolidated concedes that the applicability of the doctrine in cases involving regulatory tariffs turns on whether the tariff itself is being challenged, in which case the primary jurisdiction referral is appropriate, or whether it is simply alleged that the tariff is being violated, where the referral is inappropriate. *See U.S. Tour Operators Ass'n v. Trans World Airlines*, 556 F.2d 126 (2d Cir. 1977); *Danna v. Air France*, 463 F.2d 407 (2d Cir. 1972). Consolidated's contention that the doctrine is inappropriate here because it is simply charging a violation of filed tariffs is inexplicable in light of Consolidated's Fifth Claim for Relief which alleges that "the tariffs filed by each of the defendants is (sic) not in accordance with the FCC's order and did not properly and honestly unbundle the rates as required." (Amended Complaint, ¶ 59). Since Consolidated is challenging the filed tariff as not being in conformance with the FCC unbundling order, it is appropriate that the FCC determine the issue in the first instance. This disposition is especially appropriate in light of the fact that the FCC is intimately familiar with this issue, having conducted a full investigation of the rate structure leading up to the unbundling order and having since conducted investigations as to the effect of the unbundling orders. In fact, such rate issues are at the core of the FCC's regulatory expertise.

\* \* \*

Defendants' motion to dismiss the antitrust claims pursuant to Fed.R.Civ.Pr. 12(b)(6) is granted. Defendants' motion to dismiss the Communications Act claims under the doctrine of primary jurisdiction is granted on condition that defendants submit to the jurisdiction of the FCC with respect to the issues raised by Consolidated's claims.

It is so ordered.