843 F.2d 1154
 56 USLW 2630, 1988-1 Trade Cases 67,959,
10 Fed.R.Serv.3d 1344
 BAXLEY-DELAMAR MONUMENTS, INC., Appellants,
v.
AMERICAN CEMETERY ASSOCIATION; Arkansas Cemetery
Association; The Catholic Cemeteries Association of the
Archdiocese of Arkansas, d/b/a Calvary Cemetery; Chapel
Hill Memorial Park, Inc.; Crestview Memorial Park &
Mausoleum; Edgewood Memorial Park, Inc.; North Hills
Memorial Gardens; Pinecrest Memorial Park and Garden
Mausoleum; Sun Realty Co., d/b/a Forest Hills Memorial
Park; Griffin Leggett, Inc., d/b/a Rest Hills Memorial
Park, Inc. and d/b/a Forest Hills Memorial Park, Inc.;
Roselawn Memorial Park Association, Appellees.
 No. 87-1193.
 United States Court of Appeals, Eighth Circuit.
 Submitted Nov. 11, 1987.
Decided April 11, 1988.
 
 Edward Ray Fechtel, Eugene, Or., for appellants.
 David H. Marion, Philadelphia, Pa., for appellees.
 Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Baxley-DeLamar Monuments, Inc. appeals the district court's dismissal of its antitrust complaint against the appellee cemeteries and cemetery trade associations. Baxley-DeLamar alleged that the appellees conspired to effect illegal tie-ins in the sale of grave lots, as the tying product, and grave memorials and memorial installation services, as the tied products. Baxley-DeLamar claimed the appellees' acts constituted a conspiracy to engage in illegal tying, violating Sec. 1 of the Sherman Act; 15 U.S.C. Sec. 1 (1982); an attempt to monopolize, violating Sec. 2 of the Sherman Act, 15 U.S.C. Sec. 2 (1982); and a monopoly, violating article two, section nineteen of the Arkansas Constitution and Arkansas' Unfair Practices Act, Ark.Stat.Ann. Secs. 70-301--70-314 (1979) (now codified at Ark.Code Ann. Secs. 4-75-201--4-75-211 (1987)). The district court dismissed the complaint on the grounds that Baxley-DeLamar inadequately pleaded conspiracy in its Sherman Act Sec. 1 claim; that it failed to plead conditions giving appellees sufficient market power in the grave lot market to form the basis for an illegal tying claim; that it failed to plead the market shares of the individual appellees in the memorial sales and installation markets, and that this was necessary to plead a "dangerous possibility of success" in its attempt to monopolize claim; and that its allegations of Arkansas law violations were too conclusory to state a claim. We hold the complaint was sufficient as to the federal law claims only and so affirm in part and reverse and remand in part.
 
 
 2
 In its amended complaint Baxley-DeLamar alleged that it is in the business of selling and installing grave memorials for cemetery lot owners. It alleged that for at least the last four years before it filed its complaint, the appellees were engaged in a conspiracy to force persons who buy grave lots from the appellee cemeteries to also buy their grave memorials and memorial installation services from the appellee cemeteries. Baxley-DeLamar alleged that the appellees accomplished their design by adopting rules either requiring cemetery lot customers to buy their memorials and installation services only from appellee cemeteries or as a practical matter making it too difficult or expensive for the lot customers to buy memorials or installation services from anyone else. Together, the appellee cemeteries are said to control 57% of the "potential memorial sales" in the two relevant counties, Pulaski and Saline, and to "account for the majority of burials in such counties." Baxley-DeLamar claims that the appellees' practices have limited it to selling a small portion (7%) of the memorial and installation sales in appellees' cemeteries, while it sells a much greater percentage (39%) in cemeteries without the restrictive practices. Baxley-DeLamar also alleged that a number of grave sites in the cemeteries are "family plots," meant to allow family members to be buried near each other, and once a family member has been buried in such a plot, the surviving members' freedom to choose another graveyard is curtailed by the fact that their relative has already been buried in a particular graveyard. Baxley-DeLamar alleged that the restrictive practices burdened interstate commerce substantially, in that, inter alia, Baxley-DeLamar purchased memorials from out of state and its sales of these memorials have been hindered by the appellees. It also alleged that appellees' practices have resulted in consumers having no competitive choice in selecting and installing memorials and having to pay higher prices than they otherwise would have paid.
 
 
 3
 The district court dismissed the complaint, which had already been amended once. The court dismissed the claim under section 1 of the Sherman Act because the allegation of the tying conspiracy was too conclusory to state a cause of action. The court further held that the allegation that appellees controlled only 57% of the relevant cemetery lot market[1] demonstrated that appellees did not have sufficient market power in the cemetery lot market to form the basis for an illegal tying arrangement. The court dismissed the Sherman Act section 2 claim on the grounds that Baxley-DeLamar had to prove that there was a dangerous probability that each of the appellee cemeteries could monopolize the market individually. Since Baxley-DeLamar had not pleaded the individual market shares of any of the appellee cemeteries, the district court held that the pleading failed. Finally, the district court held that the Arkansas state law count was "grossly conclusory" and "insufficient on its face."
 
 
 4
 In testing the sufficiency of the complaint, this court must accept Baxley-DeLamar's factual allegations as true: "A complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. 'Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' " Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir.1982) (quoting Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir.1978), cert. denied, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979)). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).
 
 
 5
 First, Baxley-DeLamar challenges the district court's conclusion that it failed to plead conspiracy with adequate specificity. "The liberal rules of pleading embodied in Fed.R.Civ.P. 8 are as applicable to claims in antitrust or price discrimination cases as they are in any other case. All that is required is a short, plain statement of facts sufficient to give the defendant fair notice of the basis of the claim." Fusco v. Xerox Corp., 676 F.2d at 337 n. 7 (citations omitted). The complaint in this case alleges that the appellee cemeteries agreed to engage in tying arrangements in order to force cemetery lot customers to buy their memorials and installation services from the appellee cemeteries. The nature of the tying devices used is set forth in detail, ranging from rules flatly requiring the lot customer to deal only with the cemetery, to a variety of rules allegedly designed to erect barriers to independent memorial retailers and installers. The appellee trade associations are alleged to have participated in the conspiracy by recommending the restrictive rules complained of. Baxley-DeLamar has alleged (albeit minimally) "facts constituting the conspiracy, its object and accomplishment." Larry R. George Sales Co. v. Cool Attic Corp., 587 F.2d 266, 273 (5th Cir.1979). Therefore, Baxley-DeLamar satisfied the minimal pleading requirements of Rule 8. See Mountain View Pharmacy v. Abbott Laboratories, 630 F.2d 1383, 1386-88 (10th Cir.1980).
 
 
 6
 Next, Baxley-DeLamar challenges the district court's conclusion that it did not allege facts showing appellees had sufficient market power in the cemetery lot market to form the basis for illegal tying. In Jefferson Parish Hospital District No. 2 v. Hyde, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984), the Supreme Court characterized economic power in the tying market as the sine qua non of illegal tying:
 
 
 7
 [T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.
 
 
 8
 104 S.Ct. at 1558.
 
 
 9
 Economic power over the tying market can be established by proof either of a large enough share of the relevant market in the tying product to give the seller some power over the market or of such uniqueness or desirability of the tying product as to give the seller of the tying product an advantage other competitors in that market cannot meet. Rosebrough Monument Co. v. Memorial Park Cemetery Association, 666 F.2d 1130, 1142-43 (8th Cir.1981), cert denied, 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982) (Rosebrough II ); Moore v. Jas. H. Matthews & Co., 550 F.2d 1207, 1215-16 (9th Cir.1977) (Moore II ). Cemetery lots have been considered unique as all land is unique, Rosebrough II, 666 F.2d at 1143, and this uniqueness in conjunction with other factors contributing to market power has been held sufficient to make possible illicit tying. Rosebrough II, 666 F.2d at 1143; Moore II, 550 F.2d at 1215; Ringtown Wilbert Vault Works v. Schuylkill Memorial Park, Inc., 650 F.Supp. 823, 825-26 (E.D.Pa.1986). In addition, Baxley-DeLamar alleged that once some family members are buried in a certain cemetery, competition is curtailed with respect to the other family members by family members' desire to be buried in the same place. This allegation suggests that cemetery lots may be unique in a way that gives appellee cemeteries special leverage. In this case the alleged collective market share of the appellee cemeteries in the cemetery lot market ("a majority") is higher than that in Rosebrough II (22%). See 666 F.2d at 1143. The combination of uniqueness of the lots and the appellees' alleged market share convinces us the district court erred in determining Baxley-DeLamar did not allege economic power in the tying market adequately to survive the motion to dismiss.
 
 
 10
 Baxley-DeLamar also argues that the district court erred in dismissing its Count II on the grounds that it failed to allege that any individual appellee had a large enough market share to pose a "dangerous probability" of successful monopolization of the memorial and installation market. Baxley-DeLamar titled its Count II "Attempted Monopoly." In order to recover for individual attempts by appellees to monopolize such markets, it would indeed be necessary for Baxley-DeLamar to show the individual actors each had sufficient economic power to pose a dangerous probability of successful monopolization. See Consolidated Terminal Systems, Inc. v. ITT World Communications, Inc., 535 F.Supp. 225, 229 (S.D.N.Y.1982); see generally United States v. Empire Gas Corp., 537 F.2d 296, 302-07 (8th Cir.1976), cert. denied, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977) (discussion of "dangerous probability" requirement). There is no statement of the individual appellees' market power in the complaint. However, it appears that Baxley DeLamar actually pleaded a conspiracy to monopolize, rather than a number of individual attempts to monopolize. It pleaded the necessary elements of conspiracy in violation of Sec. 2 of the Sherman Act--conspiracy, specific intent to monopolize, and overt acts in furtherance of the conspiracy. See International Distribution Centers, Inc. v. Walsh Trucking Co., 812 F.2d 786, 795 (2d Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987).[2] Since Baxley-DeLamar did plead a cause of action, it is not necessary to dismiss Count II merely because it is titled incorrectly. See Terre du Lac Association, Inc. v. Terre du Lac, Inc., 772 F.2d 467, 474 (8th Cir.1985), cert. denied, 475 U.S. 1082, 106 S.Ct. 1460, 89 L.Ed.2d 718 (1986).
 
 
 11
 Finally, Baxley-DeLamar argues the district court erred in dismissing its state law claims under Ark.Const. art. 2, Sec. 19, and the Arkansas Unfair Practices Act, Ark.Stat.Ann. Secs. 70-301--70-314 (1979) (now codified at Ark.Code Ann. Secs. 4-75-201--4-75-211 (1987)). As the district court observed, the state law allegations are grossly conclusory. After examining the Unfair Practices Act, we conclude that Baxley-DeLamar did not allege any violation of that Act. Although the language of Ark.Const. art. 2, Sec. 19 prohibits monopolies, Baxley-DeLamar has not shown that it creates a private cause of action. Therefore, we affirm the dismissal of the Arkansas state law claims.
 
 
 12
 In holding the appellants pleaded claims meeting the minimal requirements of federal notice pleading, we venture no comment as to the future fortunes of these claims. However, in light of the dearth of specific facts amassed by appellants in the face of two dismissal motions, it should not be necessary to remind counsel that their claims shall doubtless meet more vigorous tests in the near future and the spectre of Fed.R.Civ.P. 11 sanctions looms for any allegations made without reason to believe they were well grounded in fact. Cf. Florida Monument Builders v. All Faiths Memorial Gardens, 605 F.Supp. 1324 (S.D.Fla.1984) (assessing Rule 11 sanctions against Baxley-DeLamar's counsel for pleading conspiracy without reasonable basis in fact); Monument Builders of Greater Kansas City, Inc. v. American Cemetery Association, 629 F.Supp. 1002 (D.Kan.) (same), as amended, 647 F.Supp. 972 (D.Kan.1986).
 
 
 13
 The judgment of the district court is affirmed insofar as it relates to the state claims and reversed insofar as it relates to the Sherman Act Secs. 1 and 2 claims.
 
 
 
 [1]
 The complaint actually states that appellee cemeteries control 57% of the market for potential memorial sales, not for cemetery lots. The allegation regarding the cemetery lot market is that appellee cemeteries "account for the majority of burials" in the relevant two counties. Assuming that a memorial is sold and installed for every grave, the figures would be the same
 
 
 [2]
 Though Consolidated Terminal Systems, cited by appellees, seems to state that a complaint for conspiracy to monopolize must allege individual conspirators' market shares, 535 F.Supp. at 229, this pronouncement contradicts Second Circuit authority. United States v. Consolidated Laundries Corp., 291 F.2d 563, 573 (2d Cir.1961)