**AUDELL PETROLEUM CORPORATION, and McGraw Street Realty Corporation, Plaintiffs,**

v.

**SUBURBAN PARACO CORPORATION, d/b/a Paraco Gas, Defendant.**

**No. 94–CV–3751 (DRH).**

United States District Court, E.D. New York.

Sept. 29, 1995.

Certilman Balin Adler & Hyman by Thomas J. McNamara, East Meadow, New York, for plaintiffs.

The Vincent A. DeIorio Law Firm by Patrick V. DeIorio, Purchase, New York, for defendant.

### MEMORANDUM AND ORDER

HURLEY, District Judge.

Presently before the Court is a Motion to Dismiss by Suburban Paraco Corporation ("Defendant"), pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), for failure to state a claim for an illegal tying arrangement. For the reasons set forth below, Defendant's motion is denied.

### Background

In July 1991, McGraw Street Realty Corporation ("McGraw") and Defendant entered into an agreement by which Defendant would sell to McGraw a propane-handling facility ("the Shirley Facility").[1]  (*See* Compl. ¶ 19;

---

1. The Complaint indicates that McGraw was "an affiliated real estate holding company" formed by Audell Petroleum Corporation ("Audell") for the purpose of acquiring the Shirley Facility. (Compl. ¶ 15–16.)

DeIorio Sept. 2, 1994 Affid. ¶ 5.) Audell and McGraw (collectively, "Plaintiffs") allege that the sale of the Shirley Facility was expressly conditioned upon the execution of a supply contract between Audell and Defendant ("the Propane Agreement"). (*See* Compl. ¶¶ 19–20, 21.) Plaintiffs indicate that the Propane Agreement provided that Audell would purchase "its minimum requirements of propane" as well as specified transportation services from Defendant. (Compl. ¶¶ 23–24.)

Plaintiffs filed the instant suit in August 1994, alleging that Defendant violated the Sherman Act, 15 U.S.C. § 1 *et seq.* Specifically, Plaintiffs contend that the requirement by Defendant that Audell purchase propane and transportation services from Defendant as a condition to McGraw's purchase of the Shirley Facility constitutes a tying arrangement prohibited by the Sherman Act. (Compl. ¶ 26.)

### DISCUSSION

■ A Complaint should not be dismissed for failure to state a claim, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 885 (2d Cir.1990), *cert. denied*, 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990). In reviewing the sufficiency of a Complaint, the Court takes the plaintiff's allegations as true and construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02); *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir.1992).

■ In short, a Complaint should be summarily dismissed pursuant to Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02). With these principles in mind, the Court turns to a discussion of the issues in the case at bar.

### I. Pleading Requirements for Antitrust Claims

As an initial matter, the Court addresses Defendant's argument that "[t]he ordinary notice theory of pleading is not sufficient when measuring the sufficiency of complaints brought under the antitrust laws." (Def.'s Mem.Supp. at 3.) Specifically, Defendant contends that

[b]ecause antitrust cases are considerably more complex than negligence or contract actions, the Federal Courts do require plaintiffs to plead with some particularity each of the elements of the claims alleged for relief identified, including a statement of matters and their relation to each other.

(*Id.*)

■ Plaintiffs, however, disagree with Defendant's contention that there is a heightened standard of pleading for antitrust cases. (Pls.' Mem.Opp. at 9.) Plaintiffs are correct. In 1957, the Second Circuit "repudiated the idea that some special pleading is required in antitrust cases, and the law of this Circuit has been clear ever since." *See Three Crown Ltd. Partnership v. Caxton Corp.*, 817 F.Supp. 1033, 1047 (S.D.N.Y.1993) (citing *Nagler v. Admiral Corp.*, 248 F.2d 319, 322–23 (2d Cir.1957)) (footnote omitted). "[A] short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules." *George C. Frey Ready–Mixed Concrete, Inc.*, 554 F.2d 551, 554 (2d Cir.1977) (citations omitted).

In short, the Court finds that there is no heightened pleading requirement for antitrust claims.

### II. Section 1 of the Sherman Act

The instant Complaint alleges a violation of Section 1 of the Sherman Act. In part, that section provides as follows:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1. "[W]hile 'the Sherman Act speaks of restraint of trade in absolute terms, it has long been established that § 1 proscribes only unreasonable restraints.'" *Reborn Enters., Inc. v. Fine Child, Inc.,* 590 F.Supp. 1423, 1436 (S.D.N.Y.1984) (quoting *Borger v. Yamaha Int'l Corp.,* 625 F.2d 390, 396 (2d Cir.1980), in turn citing *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911)), *aff'd,* 754 F.2d 1072 (2d Cir.1985).

Under the Sherman Act, a particular arrangement may be *per se* illegal, or illegal pursuant to a "rule of reason" analysis. *Id.*

> Courts apply a *per se* rule only to "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use."

*Id.* (quoting *Northern Pac. Ry. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958)).

> The legality of all other arrangements is governed by a *rule of reason,* "which invites a more open inquiry into, and a balancing of, such factors as the power of the defendants, the effects of the arrangement, its possible redeeming virtues, and the availability of alternative ways of achieving any legitimate objectives with fewer threats to competition."

*Id.* (citation omitted and emphasis added).

### III. *Illegal Tying Arrangement*

■ "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product.'" *Yentsch v. Texaco, Inc.,* 630 F.2d 46, 56 (2d Cir.1980) (quoting *Northern Pac. Ry.,* 356 U.S. 1, 78 S.Ct. 514). "A seller violates the antitrust laws through a tying arrangement when it uses its market power over one product to 'force' a consumer to purchase a second product." *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.,* 880 F.2d 1514, 1516 (2d Cir.1989) (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 12, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984)).

If the Complaint presently under attack contains sufficient allegations to support either a *per se* violation of the Sherman Act *or* a violation based upon a "rule of reason" approach, the instant motion must be denied. However, counsel have framed the issue as whether or not the Complaint states a cause of action solely with respect to a *per se* analysis. Accordingly, the Court addresses that issue initially, and then reviews the Complaint's sufficiency under the alternate approach of "rule of reason." [2]

### A. *Per Se Illegal Tying Claim*

■ A "per se" illegal tying arrangement requires proof of the following five (5) elements:

(1) a tying and a tied product;

(2) actual coercion by the seller that forced the buyer to accept the tied product;

(3) sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product;

(4) anticompetitive effects in the tied market;[3] and

(5) involvement of a "not insubstantial" amount of interstate commerce in the tied market.

*See, e.g., Yentsch,* 630 F.2d at 56–57 (citations omitted); *see also Telerate Sys., Inc. v. Caro,* 689 F.Supp. 221, 234 (S.D.N.Y.1988); *Consolidated Terminal Sys., Inc. v. ITT World Communications, Inc.,* 535 F.Supp. 225, 231 (S.D.N.Y.1982).

---

**2.** Even though Plaintiffs' Complaint will stand if either a *per se* or a "rule of reason" violation is properly alleged, the proof at trial may differ depending on which theory is pursued by Plaintiffs. *See* Phillip E. Areeda, *Antitrust Law* § 1728(b) (1991) ("The per se rule is ... a shortcut that allows us to condemn a restraint as unreasonable without the usual inquiries."). For that reason, the above-indicated bifurcated analysis will be undertaken.

**3.** Courts in this Circuit have not been uniform in holding that anticompetitive effects in the tied market is a distinct element of a *per se* illegal tying claim. *See infra* at 11.

### 1. Existence of a Tying and a Tied Product

■ The first element of an illegal tying arrangement is the existence of a tying and a tied product. *E.g., Yentsch,* 630 F.2d at 56. The Complaint alleges that the sale of the Shirley Facility was expressly conditioned upon the execution of a supply contract between Audell and Defendant by which Defendant agreed to sell, and Audell agreed to purchase, a supply of propane and services for the transportation of propane. (*See* Compl. ¶¶ 17–24.)

Upon review of the Complaint, the Court finds that it adequately alleges the existence of a tying product, the Shirley Facility, and tied products, propane supply and propane transportation. *See, e.g., Yentsch,* 630 F.2d at 56–57.

### 2. Actual Coercion by Seller

■ The second element of an illegal tying arrangement is actual coercion by the seller that forces the buyer to purchase the tied product. *E.g., Unijax, Inc. v. Champion Int'l, Inc.,* 683 F.2d 678, 685 (2d Cir.1982). Defendant suggests that the Complaint does not adequately allege such coercion. Specifically, Defendant argues that

> there is a complete absence of any coercion by Paraco. In fact, *nowhere* in the Complaint is it alleged that Plaintiffs were "coerced" into buying the Shirley Facility nor is there any factual allegation to be found (and therefore provided) within the four corners of the Complaint.

(Def.'s Mem. at 6–7 (emphasis in original).) A review of the Complaint reveals that Defendant is mistaken.

The Complaint contains the following allegations:

> Paraco was unwilling to sell only the Shirley Facility.

(Compl. ¶ 17.)

> Rather, Paraco required as a condition of the sale that Audell simultaneously agree

to certain provisions regarding the purchase and transportation of propane.

(Compl. ¶ 18.)

> The sale of the Shirley Facility was expressly conditioned upon the execution by the parties of a "Propane Agreement."

(*See* Compl. ¶ 20.)

> The Propane Agreement provides ... that "the execution and closing of this Agreement and the contemporaneous agreement for the sale of the Shirley Facility are each conditioned upon each other".

(Compl. ¶ 22.)

The Second Circuit has explained that a seller's "use of 'strong persuasion, encouragement, or cajolery to the point of obnoxiousness to induce ... [the buyer] to buy its full line of products' does not ... amount to actual coercion." *See Unijax,* 683 F.2d at 685 (citation omitted). Rather, "[a]ctual coercion ... is present only if the [seller] goes beyond persuasion and *conditions its [buyer's] purchase of one product on the purchase of another product.*" *See id.* (citation omitted and emphasis added).

Of course, "not every refusal to sell two products separately can be said to restrain competition." *Jefferson Parish,* 466 U.S. at 11, 104 S.Ct. at 1558. "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of the tied product...." *Id.* Such control, or leverage, will be the next element of a claim for a *per se* illegal tying arrangement, to be discussed at *infra* at 9–10.

In any event, the Court finds that by alleging that Defendant *conditioned* its sale of the Shirley Facility upon the purchase by Audell of propane and transportation services, Plaintiffs have sufficiently pleaded the element of actual coercion.

### 3. Economic Power in the Tying Product Market

The third element of an illegal tying arrangement is that the seller had sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product. *See, e.g., Yentsch,* 630 F.2d at 57. At least one court has indicated that such

economic power "is the most crucial element" of an illegal tying arrangement. *305 E. 24th Owners Corp. v. Parman Co.,* 714 F.Supp. 1296, 1305 (S.D.N.Y.1989) (citing *Jefferson Parish,* 466 U.S. at 12, 104 S.Ct. at 1558), *aff'd,* 994 F.2d 94 (2d Cir.1993).

▉ To sufficiently allege such economic power in the tying product market, a Complaint must allege

> either that the "seller's share of the market is high," *Jefferson Parish,* 466 U.S. at 17, 104 S.Ct. at 1561, ..., *or* that "the seller has some advantage not shared by his competitors in the market for the tying product. *Yentsch,* 630 F.2d at 58 (citing *United States Steel Corp. v. Fortner Enters. ["Fortner II"],* 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 [1977] ).

*See 305 East 24th Owners Corp.,* 714 F.Supp. at 1305–06 (emphasis added).

Plaintiffs suggest that they have sufficiently alleged both that Defendant has a high market share *and* that Defendant has some advantage not shared by its competitors in the market for propane-handling facilities. (*See* Pls.' Mem.Opp. at 13.) Because, as discussed in detail below, the Court finds that the Complaint insufficiently alleges the fifth element of a *per se* claim (involvement of a "not insubstantial" amount of commerce), *see infra* at 14, the Court need not rule upon the sufficiency of the allegations as to the third element. The Court, however, notes that it finds more persuasive Plaintiffs' argument that they have sufficiently alleged that Defendant had an advantage not shared by its competitors,[4] than it does Plaintiffs' argument *vis-a-vis* their allegations as to Defendant's market share.

#### 4. *Anti–Competitive Effects In The Tied Markets*

Courts in this Circuit have not been uniform in their holdings as to whether or not

---

[4.] The alleged advantage possessed by Defendant and not shared by its competitors in the tying product market was the opportunity to sell, separate from the sale of its entire business, a propane-handling facility in Suffolk County. (*See* Compl. ¶¶ 12–15.)

[5.] The Court notes that the Complaint at issue merely alleges that a *single purchaser* (Audell)

anticompetitive effects in the tied market is a distinct element of a *per se* illegal tying claim. *Compare Blaine v. Meineke Discount Muffler Shops, Inc.,* 670 F.Supp. 1107, 1113 (D.Conn.1987) (allegation of anticompetitive effect not required because such effects are presumed) and *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 558 (S.D.N.Y. 1985) (allegation of anticompetitive effects not required) *with Telerate Sys., Inc.,* 689 F.Supp. at 234 (anticompetitive effects as distinct element), *Posa, Inc. v. Miller Brewing Co.,* 642 F.Supp. 1198, 1209 (E.D.N.Y. 1986) (distinct element), and *Consolidated Terminal Sys.,* 535 F.Supp. at 231; *see also Gonzalez,* 880 F.2d at 1516–17 (anticompetitive effects is distinct element of *per se* claim) and *Konik v. Champlain Valley Physicians Hosp.,* 733 F.2d 1007, 1017 (2d Cir.) (anticompetitive effects not listed as distinct element), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

In any event, the Court need not, and does not decide this matter because, as detailed below, Plaintiffs have not sufficiently alleged the final element of a *per se* illegal tying claim.

#### 5. *Involvement of a "Not Insubstantial" Amount of Interstate Commerce in the Tied Market*

▉ "The Supreme Court has stated that as a threshold matter there must be a substantial potential for impact on competition in the tied market in order to justify per se condemnation of an alleged tying arrangement." *Gonzalez,* 880 F.2d at 1518 (citing *Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. at 1560). "If only a single purchaser were 'forced' with respect to the purchase of a tied item, the resultant impact on competition would not be sufficient to warrant the concern of antitrust law."[5] *Id.* (quoting *Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. at 1560).

---

was "forced" with respect to the purchase of the tied items. If the total volume of propane and transportation services purchased by Audell was sufficiently alleged to have been "not insubstantial," then arguably its plight would implicate the antitrust laws, notwithstanding Audell's status as a "single purchaser." *See* Areeda, *supra* note 2, § 1721 ("[I]f the dollar volume meets the usual test, excepting the single-purchaser tie seems in-

"The Supreme Court has defined 'substantial' in this context as 'substantial enough in terms of dollar-volume so as not to be merely *de minimis.*' " *Id.* (citing *Fortner Enters., Inc. v. United States Steel Corp.,* 394 U.S. 495, 501, 89 S.Ct. 1252, 1258, 22 L.Ed.2d 495 (1969) (*"Fortner I"*)). "For purposes of determining substantiality, a court measures the total volume of sales tied by the 'policy' under challenge, not merely the portion of this total accounted for by the particular plaintiff who brings suit." *Id.* (citing *Fortner I,* 394 U.S. at 502, 89 S.Ct. at 1258).

The Second Circuit has indicated that "[t]here is no magic number that definitively establishes whether a plaintiff has foreclosed a 'not insubstantial' amount of potential sales for the tied product." *Gonzalez,* 880 F.2d at 1518. The Supreme Court has provided the following guidance:

> For purposes of determining whether the amount of commerce foreclosed is too insubstantial to warrant prohibition of the practice, . . . the relevant figure is the *total volume of sales tied by the sales policy under challenge,* not the portion of this total accounted for by the particular plaintiff who brings suit.

*Fortner I,* 394 U.S. at 502, 89 S.Ct. at 1258.

Although "[t]he threshold for satisfying this [final] prong is low," *305 E. 24th Owners Corp.,* 714 F.Supp. at 1308, the Court finds that the Complaint in the case at bar insufficiently alleges this element. The Complaint is devoid of *any* allegation as to the total volume of sales tied by the allegedly illegal tying arrangement. It merely alleges, without further detail or explanation, that "plaintiffs have been injured in their business or property by reason of defendant's illegal tie-in requirements in the sum[s] of $240,000" and $375,000. (Compl. ¶¶ 31, 33.) Again, however, the relevant inquiry is *not* the amount of damages allegedly suffered as a result of an illegal arrangement, but the *volume of sales* tied by that arrangement.

It may be that by these allegations Plaintiffs are suggesting that the total volume of sales of propane tied by the allegedly illegal arrangement at issue is $240,000, and that the total volume of transportation services tied by the allegedly illegal arrangement is $375,000. (*See* Compl. ¶¶ 27, 31, 33.) Such figures would appear to implicate a "not insubstantial" amount of commerce. *See, e.g., Gonzalez,* 880 F.2d at 1518. However, a Complaint should not invite such extrapolation. Rather, it should "contain . . . a short and plain statement of the claim *showing that the pleader is entitled to relief.* . . ." Fed.R.Civ.P. 8(a) (emphasis added). In short, the Complaint does not sufficiently allege that the amount of commerce allegedly foreclosed is "not insubstantial."

The Court's inquiry does not end here, however, for as previously discussed, "[e]ven if plaintiff fails to make a showing to establish a tying arrangement which is unlawful per se, he still 'can prevail on the merits whenever he can prove, on the basis of a more thorough examination of the purposes and effects of the practices involved, that the general standards of the Sherman Act have been violated.' " *Posa,* 642 F.Supp. at 1210 (quoting *Fortner I,* 394 U.S. at 500, 89 S.Ct. at 1257) (further citations omitted); *see also Consolidated Terminal Sys.,* 535 F.Supp. at 231 ("[T]o make out a tie-in claim under the rule of reason it need not satisfy all the criteria laid down in cases like *Yentsch,* which dealt with per se claims.") (citations omitted). Thus, the Court now turns its attention to whether or not the Complaint sufficiently alleges a claim for a tying arrangement that is illegal pursuant to the "rule of reason."

**B.** *"Rule of Reason" Illegal Tying Claim*

"The rule of reason standard 'focuses directly on the challenged restraint's impact on competitive conditions.' " *Capital Imaging Assocs. v. Mohawk Valley Med. Assocs., Inc.,* 725 F.Supp. 669, 677 (N.D.N.Y. 1989) (quoting *National Soc'y of Professional Eng'rs v. United States,* 435 U.S. 679, 688, 98 S.Ct. 1355, 1363, 55 L.Ed.2d 637 (1977). "It is not enough for the plaintiff to show that it was harmed in its capacity as a competitor."

---

consistent with the logic of that test."); *but see Reisner v. General Motors Corp.* 511 F.Supp. 1167, 1178 (S.D.N.Y.1981), *aff'd,* 671 F.2d 91 (2d Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982).

*Id.* Rather, "[p]laintiffs must prove *anti-trust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* (emphasis and alteration in original) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 698, 50 L.Ed.2d 701 (1977)). "The antitrust laws were enacted for 'the protection of *competition,* not *competitors.*'" *Id.* (emphasis in original) (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)). "In other words, 'it is injury to the market, not to individual firms, that is significant.'" *Id.* (quoting *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1292 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983)).

The courts in this Circuit have not been uniform in describing the type of allegations that a Complaint must include to sufficiently state a claim for a tying arrangement that is illegal pursuant to the "rule of reason." For example, the Court in *Retail Serv. Assocs. v. ConAgra Pet Prod. Co.* indicated that to adequately allege a "rule of reason" claim, a complaint must allege a contract, combination or conspiracy in restraint of trade, 759 F.Supp. 976, 979 (D.Conn.1991), as well as "the relevant product market and ... how the net effect of the alleged violation is to restrain trade in the relevant market." *Id.* (internal quotations omitted) (citing *North Jersey Secretarial School, Inc. v. McKiernan,* 713 F.Supp. 577, 583 (S.D.N.Y.1989)).

Courts in the Northern District have "held that to adequately allege a restraint of trade under the rule of reason, a plaintiff 'must at least suggest the size of the relevant product and geographic markets, the amount of competition foreclosed, and how the acts of the defendants affected that competition.'" *Capital Imaging Assocs.,* 725 F.Supp. at 677 (quoting *Jim Forno's Continental Motors, Inc. v. Subaru Distribs. Corp.,* 649 F.Supp. 746, 754 (N.D.N.Y.1986)).

 Nonetheless, certain core elements appear in the various "rule of reason" discussions, including the need for allegations identifying the relevant market, as well as the adverse effect on that market caused by the defendant's anticompetitive conduct.[6]

A juxtapositioning of the Complaint in the case at bar against the above standards indicates that Plaintiffs have adequately alleged an illegal tying agreement under the "rule of reason." The relevant markets are identified as the markets for the sale of propane within Suffolk County and for the transportation of propane within Suffolk County. (*See* Compl. ¶ 28.) The adverse impact of the alleged tying agreement is delineated in, *inter alia,* the following paragraph of the Complaint:

(a) Audell has been prevented from purchasing propane at lower prices than that charged by Paraco from suppliers other than Paraco;

(b) Competitors of Paraco in the sale of propane have been prevented from selling propane to Audell;

(c) Audell has been prevented from utilizing the services of propane transporters other than Paraco, including itself, at prices lower than or equal to that of Paraco;

(d) Competitors of Paraco in the transportation of propane ha[ve] been prevented from selling their services to Audell.

(Compl. ¶ 27.) In short, the Court finds that Plaintiffs have sufficiently alleged a tying arrangement that is illegal pursuant to a "rule of reason."

### Conclusion

Based upon the foregoing analysis, the Court denies Defendant's Motion to Dismiss.

SO ORDERED.

6. "Under the rule of reason, the plaintiff must demonstrate a precise harm [to competition] caused by defendants' activities." *Jim Forno's Continental Motors,* 649 F.Supp. at 754. This is in contrast to his or her counterparts who rely on a *per se* approach, under which several courts have found, and this Court agrees, that a restraint of trade is presumed. *E.g., Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1108 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).